☗ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
WHEELER COUNTY, GEORGIA

**25CV003-K**
HOWARD C. KAUFOLD, JR.
JAN 22, 2025 08:27 PM

*Carol W. Bragg*
Carol W. Bragg, Clerk
Wheeler County, Georgia

IN THE SUPERIOR COURT OF WHEELER COUNTY
STATE OF GEORGIA

DEVIN WASHINGTON

               Plaintiff,

vs.

CORECIVIC, INC.;
CORECIVIC OF TENNESSEE, LLC;
BIANCA MACK;
BENITA STEGALL;
CHARLIE WILLIAMS;
CLARISSA BROWN;
DEJA EADY;
KAREN SHEPHERD;
KATIANNA HALL;
LENARD HARRIS;
MORANDA WILLIAMS;
PATRICIA WILSON;
QIANA MOBLEY;
RAVEN WISE;
TYESHA EDMOND ;
DANIELLE MCGUIRE;
CATHY HOLMES;
CHRISTOPHER SMITH;
MARGENE RICKS;
WILLIAM VINSON, JR;
LACEY WILKES;
HEATHER SMITH;
EARNEST SMITH;
CALVIN STEPHENS;
PADMAVATHI GEDDAM.
               Defendants.

**DEMAND FOR JURY TRIAL**

Civil Action File No.

---

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff Devin Washington (hereinafter "Plaintiff" or "Mr. Washington")

and files this Complaint for Damages and Demand for Jury Trial against the named Defendants,

and shows the Court as follows:

## FACTS

1.

On February 8, 2023, Mr. Washington was an inmate at Wheeler Correctional Facility ("WCF").

2.

On February 8, 2023 at approximately 11:30 am, CoreCivic Unit Manager Glynn Powell reportedly responded to a call for assistance and reported that he observed Mr. Washington brandishing a weapon in a dormitory. Mr. Washington was placed in hand restraints, escorted by security to Main Medical for a pre-segregation evaluation.

3.

The 11:30 am incident was captured on videotape.

4.

Mr. Washington had puncture wounds in his chest and abdomen, and swelling on his face and head.

5.

Danielle McGuire, LPN and Christopher Smith, RN assessed Mr. Washington at approximately 11:35 am and documented his injuries. They noted that the reason for their medical report was because of "injury" and "Pre-RHU/SHU admission."

6.

Danielle McGuire, LPN and Christopher Smith, RN did not provide any medical treatment to Mr. Washington for his injuries. Neither did any other CoreCivic employee or person. Instead, Danielle McGuire, LPN and Christopher Smith, RN cleared Mr. Washington for segregation and he was escorted to and housed in segregation.

7.

Mr. Washington remained isolated in segregation from that point forward throughout the duration of his remaining stay at WCF.

8.

CoreCivic employees should have provided Mr. Washington medical treatment for his injuries.

9.

CoreCivic employees should not have cleared Mr. Washington for segregation without treatment of his injuries.

10.

Unit Manager Glynn Powell created a report of the incident (Number 262865). Warden Doug Williams added a comment to the report stating that "no injuries were reported during the medical examination." This report was created on March 4, 2023.

11.

Later that same day, On February 8, 2023 at approximately 5:15 PM, CoreCivic employees entered Segregation and used significant force against Mr. Washington, including punches, kicks, and chemical spray, and the use of leg irons and handcuffs. They continued to punch, kick, drag, and use chemical spray on Mr. Washington after the leg irons and handcuffs were applied to Mr. Washington. They cut Mr. Washington's clothes off and dragged him around. After using force, they exited the cell, leaving Mr. Washington lying on the ground visibly wounded with the leg irons and handcuffs still in place.

12.

The following CoreCivic employees were directly involved with the 5:15 PM incident, and each one participated in and/or failed to stop others from committing each of the actions described above in paragraph 11:

- Bianca Mack, CoreCivic Correctional Officer

- Benita Stegall, CoreCivic Senior Correctional Officer

- Charlie Williams, CoreCivic Assistant Shift Supervisor

- Clarissa Brown, CoreCivic Correctional Officer

- DeJa Eady, CoreCivic Correctional Officer

- Karen Shepherd, CoreCivic Assistant Chief of Security

- Katianna Hall, CoreCivic Correctional Counselor

- Lenard Harris, CoreCivic Correctional Officer

- Moranda Williams, CoreCivic Correctional Counselor

- Patricia Wilson, CoreCivic Shift Supervisor

- Qiana Mobley, CoreCivic Correctional Counselor

- Raven Wise, CoreCivic Correctional Counselor

- Tyesha Edmond CoreCivic Correctional Officer

13.

The above-listed individuals knew Mr. Washington sustained serious injuries as a result of the use of force, but did not provide or obtain any medical treatment.

14.

The use of force by the above listed individuals was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

4

15.

The following additional individuals came to the scene and observed Mr. Washington beaten and restrained with leg irons and handcuffs but did not render any aide or medical treatment to Mr. Washington despite being aware that he was visibly physically injured as a result of the incident: Holmes Cathy, LPN; Ricks Margene, RN; and Smith Christopher, RN.

16.

At approximately 6:25 PM that same day Margene Ricks, RN completed a "Facility Emergency Anatomical Form" documenting her knowledge that force was used against Mr. Washington during the 5:15 PM incident and that Mr. Washington was "reported to have" multiple puncture wounds as well as bruising and swelling on his head from the earlier incident. Ms. Ricks did not conduct a medical evaluation of Mr. Washington because she claimed he "refused evaluation" and "refused vital signs." Ms. Ricks medically cleared Mr. Washington.

17.

The named Defendants were aware that significant force had been used against Mr. Washington and that he sustained severe injuries as a result of the use of force. They should have provided or obtained for Mr. Washington medical treatment for his injuries following this 5:15 incident.

18.

No CoreCivic employees obtained or provided Mr. Washington any medical treatment following this 5:15 incident.

19.

CoreCivic employees placed Mr. Washington on constant watch immediately following the 5:15 incident.

20.

At approximately 8:41pm the same day, Margena Ricks, RN documented that hourly medical checks were started. The named CoreCivic employees observed Mr. Washington screaming out and beating his head against the cell wall.  He was not responding to questions about his status, but he did request medical attention for his injuries.

21.

Still no medical treatment was provided to Mr. Washington.

22.

Shift Supervisor Patricia Wilson created a report of the 5:15 incident (Number 362866). Again Warden Doug Williams added a comment stating that "no injuries were reported during the medical examination."   This report was also created on March 4, 2023.

23.

The 5:15 incident was captured on videotape.

24.

Defendants left the handcuffs and leg irons on Mr. Washington for approximately 24 hours following the incident.

25.

The handcuffs and leg irons were so tight, they had caused deep, bleeding lacerations on both legs and both arms.  Despite the named Corecivic employees observing these wounds, no medical treatment was provided or obtained for Mr. Washington.

26.

On February 9, 2023, Mr. Washington could no longer eat because of the pain in his stomach. He also had painful urination. He told the named CoreCivic employees about this pain and again requested medical attention. The named CoreCivic employees observed his bleeding wounds and heard his requests for medical attention for his injuries. They simply documented his behavior as "bizarre," and left him there without providing or obtaining any medical attention.

27.

Shortly thereafter, Mr. Washington began developing significant discoloration of his skin as well as blistering on his legs. He also developed pitting edema on his hands and legs. These developments were observed by the named CoreCivic employees.

28.

From their visual observations and also hearing Mr. Washington's statements, the named CoreCivic employees were aware of Mr. Washington's stab wounds in his chest and abdomen, swelling on his head and face, bleeding wounds on his arms and legs from the restraints, discoloration and blistering on his legs, diffuse body pain, stomach pain, stomach bruising, painful urination, and that the chemical agent that had been sprayed on him on February 8 that had not been washed off. Despite this awareness, the named CoreCivic employees did not provide or obtain any medical treatment for his injuries.

29.

The named CoreCivic employees knew Mr. Washington had not been provided any medical treatment for these injuries. Despite this awareness, the named CoreCivic employees did not provide or obtain any medical treatment for his injuries.

30.

Mr. Washington's condition continued to deteriorate. By February 15, 2023 Mr. Washington could only lay on the floor of his cell and responded only to internal stimuli. His breathing was labored. He was not oriented and could not respond to questions. He was defecating and urinating on the floor because he could not move. Still no medical treatment for his injuries was provided to or obtained for him when this was observed.

31.

On February 15, 2023 at 10:25 am, Wilkes and Vinsen RN medically cleared Mr. Washington for transfer to another facility. They reported that no injuries were found. Because Mr. Washington could not walk due to his injuries, CoreCivic employees had to transport him using a wheelchair.

32.

On February 16, 2023, Mr. Washington was taken to Baldwin State Prison. There, Baldwin medical personnel documented that Mr. Washington had labored breathing, healed stab wounds on chest and lacerations on his wrists, ecchymosis at umbilicus, blisters noted on bilateral knees with significant ecchymosis extending from the knees to the feet in various areas, edema to bilateral hands and lower extremities. They further noted he had acute kidney injury.

33.

Baldwin State Prison medical professionals referred Mr. Washington to the emergency room, and he was transported to Augusta University Medical Center (AUMC) Emergency Room on February 16, 2023 at 6:28 PM.

34.

CoreCivic employees told AUMC hospital staff that Mr. Washington was brought to the emergency room primarily because he had not eaten for 10 days.

35.

Upon admission to AUMC, Mr. Washington was tachycardic and complained of diffuse body pain, including chest pain, shortness of breath, abdominal pain, dysuria, and pain in lower extremities. He also reported that he had been urinating blood. Hospital staff observed that he had pitting edema alongside purpura and blister like lesions on lower extremities and upper extremities scattered. AUMC staff described him as "clearly an ill patient."

36.

Imaging revealed gastroduodenal perforation, pneumomediastinum and some subcutaneous air. Mr. Washington was taken to the operating room emergently for ex-lap with omental patch of two duodenal perforations and a feeding j-tube was placed. It was reported that the duodenal perforation may have been caused by a caustic ingestion.

37.

Mr. Washington was found to have bilateral upper and lower segmental and subsegmental Pulmonary embolisms. He was admitted to the Surgical/Trauma Intensive Care Unit STICU for hemodynamic monitoring and hypertensive with systolic blood pressure in 200s. A transthoracic echocardiogram (TTE) revealed an ejection fraction rate of <15% and cardiac index of 1.9. IV fluids were stopped and he was placed on afterload reduction with scheduled hydralazine. He was diagnosed with acute systolic heart failure and Takotsubo cardiomyopathy (Takotsubo syndrome).

38.

Mr. Washington was severely septic. He was also found to have bilateral lower extremity ecchymosis, erythema, and pustules.  Purpuric rash was present on all four extremities, most pronounced on both legs with scattered pustular lesions on his knees.

39.

Mr. Washington was diagnosed with acute kidney injury, with significantly elevated CK and lipase noted as well.

40.

Mr. Washington was discharged from Augusta University Hospital on March 5, 2023 and transported to Augusta State Medical Prison, where he received continued care for his significant injuries.

41.

Mr. Washington sustained permanent injuries and scaring as a result of the February 8, 2023 5:15 incident and events that followed at WCF.

42.

From February 8, 2023 through February 16, 2023, Mr. Washington requested medical attention for his injuries each day, several times a day.  However, CoreCivic employees, despite hearing his requests for medical treatment, did not provide or obtain any medical treatment for his injuries.

43.

During the relevant time period, administrative remedies were unavailable to Plaintiff, as CoreCivic employees kept Plaintiff in his segregated cell and did not allow him to leave or

otherwise lodge a grievance regarding his situation. They withheld any and all opportunity to utilize any grievance procedure.

44.

From February 8, 2023 through February 16, 2023, Mr. Washington's injuries were visible and obvious to everyone (including laypersons). The named CoreCivic employees continued to visually assess Mr. Washington and observed the extent of his injuries each day, including but not limited to open wounds, bleeding, writhing and screaming in pain, blisters, skin discoloration, bruising, and swelling. They observed his continually deteriorating condition. Despite personally observing his injuries and his continually deteriorating condition, Defendants did not provide or obtain any medical treatment or intervention.

45.

Mr. Washington's injuries stated herein were as a result of the use of excessive force against him on February 8, 2023 and the days of neglect that followed at WCF.

46.

Mr. Washington's injuries stated herein were as a result of the use of force and the delay in receiving medical care.

47.

As a result of the above actions and omissions, Mr. Washington sustained serious and permanent bodily injury, pain and suffering, and emotional distress.

48.

Throughout the entirety of Mr. Washington's stay at WCF, the Licensed Practical Nurses were providing care under the supervision and direction of CoreCivic, the Registered Nurses, the Health Services Administrator, the Nurse Practitioners, and the Medical Doctors.

49.

Throughout the entirety of Mr. Washington's stay at WCF, the Registered Nurses were providing care under the supervision and direction of CoreCivic, the Health Services Administrator, the Nurse Practitioners, and the Medical Doctors.

50.

At all times relevant to this Complaint, all Defendants were providing services to Mr. Washington, including but not limited to security, custody, safe housing, and medical care.

51.

All Defendants are legally responsible, in whole or in part, for the operation and conditions of WCF, and for the health and safety of persons incarcerated in WCF.

52.

At all times relevant, the individual Defendants were employees/ agents of the CoreCivic Defendants acting in the course and scope of their employment/agency.

53.

To the extent applicable, on December 18, 2023, Plaintiff provided all appropriate Defendants proper ante litem notice in accordance with O.C.G.A. §§ 36-11-1 and 50-21-26.  The Ante Litem Notice was sent via certified mail, return receipt requested.  Plaintiff complied with all prerequisite ante-litem requirements and attaches the pertinent ante-litem documents as See Exhibit 1.

## PARTIES, JURISDICTION & VENUE

### I.    Plaintiff Devin Washington

54.

Plaintiff Devin Washington is a Georgia resident and subject to the jurisdiction of this Court.

### II.    Defendants

#### A.    The CoreCivic Entities

55.

Defendant CoreCivic, Inc, formerly known as Corrections Corporation of America, is a foreign profit corporation with a principal office address of 5501 Virginia Way, Suite 110, Brentwood, TN 37027.  It is authorized to do business in Georgia and may be served with process in this case by serving its registered agent, Russell Clark at 4 West Railroad Avenue, Alamo, Georgia 30411 (Wheeler County).

56.

Defendant CoreCivic, of Tennessee, LLC, is a foreign limited liability company with a principal office address of 5501 Virginia Way, Suite 110, Brentwood, TN 37027.  It is authorized to do business in Georgia and may be served with process in this case by serving its registered agent, Russell Clark at 4 West Railroad Avenue, Alamo, Georgia 30411 (Wheeler County).

57.

CoreCivic, Inc and CoreCivic, of Tennessee, LLC will hereinafter collectively be referred to as "CoreCivic" or "the CoreCivic Defendants."

58.

WCF is a private prison that during all relevant times, was owned, operated, and managed by CoreCivic pursuant to a contract with the State of Georgia.

59.

During the relevant time period, CoreCivic had an obligation to provide administrative services, security services, custodial services, and health care services (including medical treatment such as nursing and physician care, medical records management, pharmacy supply and services management), and other related services at WCF.

60.

During the relevant time period, CoreCivic had an obligation to provide security services to WCF inmates.

61.

During the relevant time period, CoreCivic had an obligation to provide custodial services to WCF inmates.

62.

During the relevant time period, CoreCivic had an obligation to provide health care services to WCF inmates.

63.

During the relevant time period, WCF was accredited by the American Correctional Association (ACA) and by the Medical Association of Georgia (MAG).

64.

During all relevant times, CoreCivic acted under the color of state law.

65.

At all times relevant to this Complaint, all individuals at WCF providing services to Mr. Washington, including but not limited to security, custody, safe housing, and medical care, were employees/agents of CoreCivic acting in the course and scope of their employment/agency.

66.

At all times relevant to this Complaint, all security staff of CoreCivic at WCF must have been certified by Georgia Peace Officers Standard and Training Council (GPOST) in accordance with GPOST Rules.

67.

At all times relevant to this Complaint, Defendant CoreCivic was responsible for the administration, supervision, and delivery of security, housing, custodial, health, and medical services to inmates such as Mr. Washington at the WCF.

68.

At all times relevant to this Complaint, the named individual Defendants were employees and/or agents of CoreCivic and were acting in the course and scope of their employment/agency.

69.

CoreCivic was responsible for, and knowingly promulgated, enforced, and allowed to persist, policies and procedures of WCF that, among other things:

a. Caused too few qualified employees, staff, and agents, including security and medical personnel, to be hired at WCF;

b. Caused WCF to have inadequate space to enable it to provide adequate security, housing, custody, and medical care to its inmates;

15

    c.  Caused WCF to have inadequate resources to enable it to provide adequate security, housing, custody, and medical care to its inmates;

    d.  Caused WCF to have inadequate training and supervision of its employees, staff and agents, including medical personnel, resulting in the inadequate delivery of security, safe housing, custody, and medical care to its inmates;

    e.  Caused WCF to have inadequate training and supervision of its employees, staff and agents, including security guards, resulting in the use of excessive force against Mr. Washington on February 8, 2023 leading serious bodily injury.

70.

At all times relevant to this Complaint, CoreCivic was responsible for the training and supervision of all individuals at WCF providing services at WCF, including but not limited to security, custody, safe housing, and medical care.

71.

CoreCivic, through their employees and agents knew that the prison security staff was not receiving sufficient training on the appropriate use of force, which was leading to the use of excessive force against inmates at WCF.  CoreCivic, through their employees and agents, knew that its failure to train and supervise its security staff was deliberate indifference to the risk of causing serious bodily harm to inmates through the application of excessive force.

72.

CoreCivic, through their employees and agents knew that its failure to train and supervise was deliberate indifference to the risk of causing serious bodily harm through the application of force.

73.

CoreCivic, through their employees and agents knew that the prison security staff was not receiving sufficient training on the appropriate use of force, which was leading to the use of excessive force against inmates at WCF.

74.

CoreCivic failed to adequately train or supervise WCF employees, staff, and agents, including medical employees and prison security staff.

75.

At the times relevant to this Complaint, CoreCivic knew through their employees and agents that inmates at WCF were not receiving adequate medical care for serious medical needs and failed to take reasonable steps to address the problem.

76.

At the times relevant to this Complaint, CoreCivic knew that WCF would not be able to provide inmates with adequate medical care for serious medical needs should the need arise, such as injuries from the use of force or the emerging deteriorating condition of Mr. Washington, and failed to take reasonable steps to address the problem.

77.

CoreCivic knowingly permitted the policy, custom, and practice of the application of excessive force against inmates at WCF to persist.

78.

CoreCivic knowingly permitted the policy, custom, and practice of understaffing to persist throughout WCF.

79.

CoreCivic knowingly permitted the policy, custom, and practice of denying inmates access to medical care at WCF to persist.

80.

CoreCivic knowingly permitted to persist the policy, custom, and practice of failing to respond to serious and/or emergency medical needs in a timely and adequate manner.

81.

These policies of CoreCivic were the moving force behind the constitutional and other legal violations alleged herein.

82.

A reasonable person in CoreCivic's position would know that its failure to provide or cause to be provided security and safe housing to Mr. Washington, and CoreCivic's failure to train and supervise reflected deliberate indifference to his health and safety.

83.

A reasonable person in CoreCivic's position would know that its failure to provide or cause to be provided medical care to Mr. Washington, and CoreCivic's failure to train and supervise reflected deliberate indifference to serious medical needs.

84.

In addition to direct liability, CoreCivic is also liable under the doctrine of *Respondeat Superior* for the acts and omissions of its officials, employees, and agents, which occurred in the ordinary course of their employment/agency with CoreCivic.

85.

Defendant CoreCivic, through their employees and agents, also had actual knowledge of Mr. Washington's condition, specifically that Mr. Washington had been physically beaten by guards and sustained injuries therefrom, was left immobile for an extended period of time in handcuffs and leg irons, had visible bleeding (with uncleaned/untreated wounds), bruising, skin discoloration, blisters, and edema, was screaming and crying out in pain, had pain throughout his body, had painful urination, was not eating for approximately 10 days, and had chemical agents used on him that were not washed off.

86.

CoreCivic further knew that Mr. Washington's condition was deteriorating each day to the point he was left immobile on the floor, unresponsive except to internal stimuli, defecating and urinating on himself. CoreCivic knew that these injuries were serious bodily injuries that were contributing to his continued deteriorating, and that they could lead to further serious bodily injury or death if not properly untreated.  Despite having this knowledge and knowing the risk of failing to provide proper medical care, CoreCivic failed to respond reasonably to address Mr. Washington's needs.

87.

The Defendant CoreCivics' actions exhibited deliberate indifference to the safety and well-being of Mr. Washington and subjected him to the unnecessary and wanton infliction of pain, which constituted cruel and unusual punishment.

88.

Both CoreCivic Defendants are subject to the jurisdiction of this Court, and venue is proper.

### B. **Bianca Mack**

89.

At all times relevant to this Action, Defendant Bianca Mack ("Defendant Mack") was a prison security guard at WCF.    Her title was Correctional Officer.    At all relevant times, Defendant Mack acted under color of state law. Defendant Mack is being sued for damages in both her individual and official capacities.

90.

Defendant Mack may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

91.

Defendant Mack is subject to the jurisdiction of this Court, and venue is proper.

92.

At all times relevant hereto, Defendant Mack was employed by CoreCivic.

93.

At all times relevant hereto, Defendant Mack was acting in the course and scope of employment with CoreCivic.

### C. **Benita Stegall**

94.

At all times relevant to this Action, Defendant Benita Stegall ("Defendant Stegall") was a prison security guard at WCF.    Her title was Senior Correctional Officer.  At all relevant times, Defendant Stegall acted under color of state law. Defendant Stegall is being sued for damages in both her individual and official capacities.

95.

Defendant Stegall may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

96.

Defendant Stegall is subject to the jurisdiction of this Court, and venue is proper.

97.

At all times relevant hereto, Defendant Stegall was employed by CoreCivic.

98.

At all times relevant hereto, Defendant Stegall was acting in the course and scope of employment with CoreCivic.

**D.  Charlie Williams**

99.

At all times relevant to this Action, Defendant Charlie Williams ("Defendant Williams") was a prison security guard at WCF.    His title was Assistant Shift Supervisor.  At all relevant times, Defendant Williams acted under color of state law. Defendant Williams is being sued for damages in both his individual and official capacities.

100.

Defendant Williams may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

101.

Defendant Williams is subject to the jurisdiction of this Court, and venue is proper.

102.

At all times relevant hereto, Defendant Williams was employed by CoreCivic.

103.

At all times relevant hereto, Defendant Williams was acting in the course and scope of employment with CoreCivic.

### E.  Clarissa Brown

104.

At all times relevant to this Action, Defendant Clarissa Brown ("Defendant Brown") was a prison security guard at WCF.    Her title was Correctional Officer.   At all relevant times, Defendant Brown acted under color of state law. Defendant Brown is being sued for damages in both her individual and official capacities.

105.

Defendant Brown may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

106.

Defendant Brown is subject to the jurisdiction of this Court, and venue is proper.

107.

At all times relevant hereto, Defendant Brown was employed by CoreCivic.

108.

At all times relevant hereto, Defendant Brown was acting in the course and scope of employment with CoreCivic.

### F. **Deja Eady**

#### 109.

At all times relevant to this Action, Defendant Deja Eady ("Defendant Eady") was a prison security guard at WCF. Her title was Correctional Officer. At all relevant times, Defendant Eady acted under color of state law. Defendant Eady is being sued for damages in both her individual and official capacities.

#### 110.

Defendant Eady may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

#### 111.

Defendant Eady is subject to the jurisdiction of this Court, and venue is proper.

#### 112.

At all times relevant hereto, Defendant Eady was employed by CoreCivic.

#### 113.

At all times relevant hereto, Defendant Eady was acting in the course and scope of employment with CoreCivic.

### G. **Karen Shepherd**

#### 114.

At all times relevant to this Action, Defendant Karen Shepherd ("Defendant Shepherd") was a prison security guard at WCF. Her title was Assistant Chief of Security. At all relevant times, Defendant Shepherd acted under color of state law. Defendant Shepherd is being sued for damages in both her individual and official capacities.

115.

Defendant Shepherd may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

116.

Defendant Shepherd is subject to the jurisdiction of this Court, and venue is proper.

117.

At all times relevant hereto, Defendant Shepherd was employed by CoreCivic.

118.

At all times relevant hereto, Defendant Shepherd was acting in the course and scope of employment with CoreCivic.

## H. **Katianna Hall**

119.

At all times relevant to this Action, Defendant Katianna Hall ("Defendant Hall") was a prison security guard at WCF.    Her title was Correctional Counselor.  At all relevant times, Defendant Hall acted under color of state law. Defendant Hall is being sued for damages in both her individual and official capacities.

120.

Defendant Hall may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

121.

Defendant Hall is subject to the jurisdiction of this Court, and venue is proper.

122.

At all times relevant hereto, Defendant Hall was employed by CoreCivic.

24

123.

At all times relevant hereto, Defendant Hall was acting in the course and scope of employment with CoreCivic.

### I. **Lenard Harris**

124.

At all times relevant to this Action, Defendant Lenard Harris ("Defendant Harris") was a prison security guard at WCF. His title was Correctional Officer. At all relevant times, Defendant Harris acted under color of state law. Defendant Harris is being sued for damages in both his individual and official capacities.

125.

Defendant Harris may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else he may be found.

126.

Defendant Harris is subject to the jurisdiction of this Court, and venue is proper.

127.

At all times relevant hereto, Defendant Harris was employed by CoreCivic.

128.

At all times relevant hereto, Defendant Harris was acting in the course and scope of employment with CoreCivic.

**J.  Moranda Williams**

129.

At all times relevant to this Action, Defendant Moranda Williams ("Defendant Hall") was a prison security guard at WCF.    Her title was Correctional Counselor.  At all relevant times, Defendant Williams acted under color of state law. Defendant Williams is being sued for damages in both her individual and official capacities.

130.

Defendant Williams may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

131.

Defendant Williams is subject to the jurisdiction of this Court, and venue is proper.

132.

At all times relevant hereto, Defendant Williams was employed by CoreCivic.

133.

At all times relevant hereto, Defendant Williams was acting in the course and scope of employment with CoreCivic.

**K.  Patricia Wilson**

134.

At all times relevant to this Action, Defendant Patricia Wilson ("Defendant Hall") was a prison security guard at WCF.    Her title was Shift Supervisor.  At all relevant times, Defendant Wilson acted under color of state law. Defendant Wilson is being sued for damages in both her individual and official capacities.

26

135.

Defendant Wilson may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

136.

Defendant Wilson is subject to the jurisdiction of this Court, and venue is proper.

137.

At all times relevant hereto, Defendant Wilson was employed by CoreCivic.

138.

At all times relevant hereto, Defendant Wilson was acting in the course and scope of employment with CoreCivic.

**L.  <u>Qiana Mobley</u>**

139.

At all times relevant to this Action, Defendant Qiana Mobley ("Defendant Hall") was a prison security guard at WCF.    Her title was Correctional Counselor.  At all relevant times, Defendant Mobley acted under color of state law. Defendant Mobley is being sued for damages in both her individual and official capacities.

140.

Defendant Mobley may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

141.

Defendant Mobley is subject to the jurisdiction of this Court, and venue is proper.

142.

At all times relevant hereto, Defendant Mobley was employed by CoreCivic.

27

143.

At all times relevant hereto, Defendant Mobley was acting in the course and scope of employment with CoreCivic.

**M. <u>Raven Wise</u>**

144.

At all times relevant to this Action, Defendant Raven Wise ("Defendant Wise") was a prison security guard at WCF.   Her title was Correctional Counselor.  At all relevant times, Defendant Wise acted under color of state law. Defendant Wise is being sued for damages in both her individual and official capacities.

145.

Defendant Wise may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

146.

Defendant Wise is subject to the jurisdiction of this Court, and venue is proper.

147.

At all times relevant hereto, Defendant Wise was employed by CoreCivic.

148.

At all times relevant hereto, Defendant Wise was acting in the course and scope of employment with CoreCivic.

**N. <u>Tyesha Edmond</u>**

149.

At all times relevant to this Action, Defendant Tyesha Edmond ("Defendant Hall") was a prison security guard at WCF.    Her title was Correctional Officer.   At all relevant times,

Defendant Edmond acted under color of state law. Defendant Edmond is being sued for damages in both her individual and official capacities.

150.

Defendant Edmond may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

151.

Defendant Edmond is subject to the jurisdiction of this Court, and venue is proper.

152.

At all times relevant hereto, Defendant Edmond was employed by CoreCivic.

153.

At all times relevant hereto, Defendant Edmond was acting in the course and scope of employment with CoreCivic.

**O. Danielle McGuire**

154.

Defendant Danielle McGuire (hereinafter "Defendant McGuire") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic. Defendant McGuire had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

155.

Defendant McGuire is a resident of Montgomery County and is subject to the jurisdiction of this Court. She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

156.

Defendant McGuire is subject to the jurisdiction of this Court and venue is proper.

157.

At all relevant times, Defendant McGuire acted under color of state law and pursuant to a contract with CoreCivic. Defendant McGuire is being sued for damages in both her individual and official capacities.

158.

At all times relevant hereto, Defendant McGuire was employed by CoreCivic.

159.

At all times relevant hereto, Defendant McGuire was acting in the course and scope of employment with CoreCivic.

**P. Cathy Holmes**

160.

Defendant Cathy Holmes (hereinafter "Defendant Holmes") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic.  Defendant Holmes had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

161.

Defendant Holmes is a resident of Montgomery County and is subject to the jurisdiction of this Court.  She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

162.

Defendant Holmes is subject to the jurisdiction of this Court and venue is proper.

163.

At all relevant times, Defendant Holmes acted under color of state law and pursuant to a contract with CoreCivic. Defendant McGuire is being sued for damages in both her individual and official capacities.

164.

At all times relevant hereto, Defendant Holmes was employed by CoreCivic.

165.

At all times relevant hereto, Defendant Holmes was acting in the course and scope of employment with CoreCivic.

**Q. <u>Christopher Smith</u>**

166.

Defendant Christopher Smith (hereinafter "Defendant C Smith") is a Registered Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of his employement and/or agency of CoreCivic. Defendant C Smith had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

167.

Defendant C Smith is a resident of Montgomery County and is subject to the jurisdiction of this Court. He may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else he may be found.

168.

Defendant C Smith is subject to the jurisdiction of this Court and venue is proper.

169.

At all relevant times, Defendant C Smith acted under color of state law and pursuant to a contract with CoreCivic. Defendant C Smith is being sued for damages in both his individual and official capacities.

170.

At all times relevant hereto, Defendant C Smith was employed by CoreCivic.

171.

At all times relevant hereto, Defendant C Smith was acting in the course and scope of employment with CoreCivic.

**R.  Margene Ricks**

172.

Defendant Margene Ricks (hereinafter "Defendant Ricks") is a Registered Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic.  Defendant Ricks had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

173.

Defendant Ricks is a resident of Montgomery County and is subject to the jurisdiction of this Court.  She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

174.

Defendant Ricks is subject to the jurisdiction of this Court and venue is proper.

175.

At all relevant times, Defendant Ricks acted under color of state law and pursuant to a contract with CoreCivic. Defendant Ricks is being sued for damages in both her individual and official capacities.

176.

At all times relevant hereto, Defendant Ricks was employed by CoreCivic.

177.

At all times relevant hereto, Defendant Ricks was acting in the course and scope of employment with CoreCivic.

**S.  William Vinson**

178.

Defendant William Vinson (hereinafter "Defendant Vinson") is a Registered Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of his employement and/or agency of CoreCivic.  Defendant Vinson had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

179.

Defendant Vinson is a resident of Montgomery County and is subject to the jurisdiction of this Court.  He may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else he may be found.

180.

Defendant Vinson is subject to the jurisdiction of this Court and venue is proper.

181.

At all relevant times, Defendant Vinson acted under color of state law and pursuant to a contract with CoreCivic. Defendant Winson is being sued for damages in both his individual and official capacities.

182.

At all times relevant hereto, Defendant Vinson was employed by CoreCivic.

183.

At all times relevant hereto, Defendant Vinson was acting in the course and scope of employment with CoreCivic.

**T.  Lacey Wilkes**

184.

Defendant Lacey Wilkes (hereinafter "Defendant Wilkes") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic.  Defendant Wilkes had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

185.

Defendant Wilkes is a resident of Montgomery County and is subject to the jurisdiction of this Court.  She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

186.

Defendant Wilkes is subject to the jurisdiction of this Court and venue is proper.

187.

At all relevant times, Defendant Wilkes acted under color of state law and pursuant to a contract with CoreCivic. Defendant Wilkes is being sued for damages in both her individual and official capacities.

188.

At all times relevant hereto, Defendant Wilkes was employed by CoreCivic.

189.

At all times relevant hereto, Defendant Wilkes was acting in the course and scope of employment with CoreCivic.

**U. <u>Heather Smith</u>**

190.

Defendant Heather Smith (hereinafter "Defendant H Smith") is a Licensed Practical Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic.  Defendant H Smith had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

191.

Defendant H Smith is a resident of Montgomery County and is subject to the jurisdiction of this Court.  She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

192.

Defendant H Smith is subject to the jurisdiction of this Court and venue is proper.

193.

At all relevant times, Defendant H Smith acted under color of state law and pursuant to a contract with CoreCivic. Defendant H Smith is being sued for damages in both her individual and official capacities.

194.

At all times relevant hereto, Defendant H Smith was employed by CoreCivic.

195.

At all times relevant hereto, Defendant H Smith was acting in the course and scope of employment with CoreCivic.

**V.  Earnest Smith**

196.

Defendant Earnest Smith (hereinafter "Defendant E Smith") is a Registered Nurse who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of his employement and/or agency of CoreCivic.  Defendant E Smith had a nurse-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

197.

Defendant E Smith is a resident of Montgomery County and is subject to the jurisdiction of this Court.  He may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else he may be found.

198.

Defendant E Smith is subject to the jurisdiction of this Court and venue is proper.

199.

At all relevant times, Defendant E Smith acted under color of state law and pursuant to a contract with CoreCivic. Defendant E Smith is being sued for damages in both his individual and official capacities.

200.

At all times relevant hereto, Defendant E Smith was employed by CoreCivic.

201.

At all times relevant hereto, Defendant E Smith was acting in the course and scope of employment with CoreCivic.

**W. Calvin Stevens**

202.

Defendant Calvin Stevens (hereinafter "Defendant Stevens") is a Mental Health Counselor who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of his employement and/or agency of CoreCivic.  Defendant Stevens had a counselor-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

203.

Defendant Stevens is a resident of Montgomery County and is subject to the jurisdiction of this Court.  He may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else he may be found.

204.

Defendant Stevens is subject to the jurisdiction of this Court and venue is proper.

205.

At all relevant times, Defendant Stevens acted under color of state law and pursuant to a contract with CoreCivic. Defendant Stevens is being sued for damages in both his individual and official capacities.

206.

At all times relevant hereto, Defendant Stevens was employed by CoreCivic.

207.

At all times relevant hereto, Defendant Stevens was acting in the course and scope of employment with CoreCivic.

**X.  Padmavathi Geddam**

208.

Defendant Padmavathi Geddam (hereinafter "Defendant Geddam") is a Medical Doctor who, during the relevant time period, was an employee and/or agent of CoreCivic and was acting in the course and scope of her employement and/or agency of CoreCivic.  Defendant Geddam had a doctor-patient relationship with Mr. Washington and provided care and treatment to him during the relevant time period at WCF.

209.

Defendant Geddam is a resident of Montgomery County and is subject to the jurisdiction of this Court.  She may be served with process at Wheeler Correctional Facility located at 195 N Broad St, Alamo, GA 30411 or anywhere else she may be found.

210.

Defendant Geddam is subject to the jurisdiction of this Court and venue is proper.

211.

At all relevant times, Defendant Geddam acted under color of state law and pursuant to a contract with CoreCivic. Defendant Geddam is being sued for damages in both her individual and official capacities.

212.

At all times relevant hereto, Defendant Geddam was employed by CoreCivic.

213.

At all times relevant hereto, Defendant Geddam was acting in the course and scope of employment with CoreCivic.

214.

Jurisdiction and venue are proper in this Court.

**CAUSES OF ACTION**

**COUNT I**
**42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS-**
**Deliberate Indifference to Serious Bodily Injury through Use of Excessive Force**

215.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

216.

This count is alleged against the following named Defendants: CoreCivic, Inc., CoreCivic of Tennessee, LLC, Bianca Mack, Benita Stegall, Charlie Williams, Clarissa Brown, Deja Eady,

Karen Shepherd, Katianna Hall, Lenard Harris, Moranda Williams, Patricia Wilson, Qiana Mobley, Raven Wise, and Tyesha Edmond, collectively referred to as "the Count I Defendants."

217.

The Count I Defendants used force against Mr. Washington on February 8, 2023 during the 5:15 pm incident.

218.

The Count I Defendants used force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained.

219.

The Count I Defendants used excessive force against Mr. Washington on February 8, 2023 during the 5:15 pm incident.

220.

The Count I Defendants used excessive force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained.

221.

The Count I Defendants used gratuitous and excessive force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained.

222.

The Count I Defendants subjected Mr. Washington to a substantial risk of serious and permanent physical harm and unnecessary pain, given the force of the punches and kicks, use of chemical spray (without washing it off), tightness of the restraints, the length of time restrained, and his nakedness, particularly when all of this continued to occur after he was restrained and subdued.

40

223.

The amount of force used by the Count I Defendants went beyond that required to maintain or restore discipline.

224.

The use of force by the Count I Defendants was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

225.

The Count I Defendants were aware that Mr. Washington was at a substantial risk of serious and permanent bodily harm through their use of force.

226.

The Count I Defendants disregarded that substantial risk of serious and permanent bodily harm yet proceeded to use of force beyond which was required to maintain discipline or for protective reasons.

227.

The Count I Defendants used excessive force against Plaintiff in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution when they violently assaulted Plaintiff and continued to do so after he was restrained and subdued.

228.

As a direct and proximate result of these acts of the Count I Defendants, Plaintiff's constitutional rights were violated and he suffered serious and permanent injuries, pain and suffering, limited earnings capacity, and emotional distress.

229.

Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

## COUNT II
## 42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS-
### Deliberate Indifference to Serious Bodily Injury through Failure to Protect

230.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

231.

This count is alleged against the following named Defendants: Corecivic, Inc., Corecivic of Tennessee, LLC, Bianca Mack, Benita Stegall, Charlie Williams, Clarissa Brown, Deja Eady, Karen Shepherd, Katianna Hall, Lenard Harris, Moranda Williams, Patricia Wilson, Qiana Mobley, Raven Wise, and Tyesha Edmond, collectively referred to as "the Count II Defendants."

232.

The Count II Defendants were present and observed others use force against Mr. Washington on February 8, 2023 during the 5:15 pm incident.

233.

The Count II Defendants were present and observed others use gratuitous force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained and subdued.

42

234.

The Count II Defendants were present and observed others use force against Mr. Washington that was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

235.

The Count II Defendants were present and observed others use excessive force against Mr. Washington on February 8, 2023 during the 5:15 pm incident.

236.

The Count II Defendants had a duty to intervene to protect Mr. Washington from the use of excessive force.

237.

The Count II Defendants had a duty to intervene to protect Mr. Washington from constitutional violations.

238.

The Count II Defendants were present and did not intervene in others' use of force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained or subdued.

239.

The Count II Defendants were present and did not intervene in others' use of force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after it became clear the use of force used against him was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

240.

The Count II Defendants knew the use of force by others was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

241.

The Count II Defendants disregarded that substantial risk of serious bodily harm when they failed to intervene in the others' use of force on Mr. Washington beyond which was required to maintain discipline or for protective reasons.

242.

The Count II Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff posed by other CoreCivic prison security guards when they were violently assaulting Plaintiff beyond which was required to maintain or restore discipline, particularly after Mr. Washington was subdued by handcuffs.

243.

Despite being subjectively aware of a substantial risk of serious harm to Plaintiff posed by other CoreCivic prison security guards, the Count II Defendants took no action to protect Plaintiff; instead, Defendants allowed the violent assault on Plaintiff by the CoreCivic security guards to continue.

244.

The Count II Defendants' actions and inactions demonstrate a callous and conscious indifference to Plaintiff's safety.

245.

The Count II Defendants' deliberate indifference caused Plaintiff to suffer serious bodily and permanent bodily injury.

246.

As a direct and proximate result of these acts and omissions, Plaintiff's constitutional rights were violated and he suffered serious and permanent injuries, pain and suffering, limited earnings capacity, and emotional distress.

247.

Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

**COUNT III**
**42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS-**
**Deliberate Indifference to Serious Medical Need**
**(All Defendants)**

248.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

249.

Defendants were responsible for obtaining and/or providing medical care for Mr. Washington.

250.

While in the custody and care of Defendants, Mr. Washington sustained serious, life-threatening injuries and had serious medical needs that were obvious to any lay person.

251.

Defendants had actual knowledge of Mr. Washington's serious medical needs.

252.

Defendants personally observed Mr. Washington under conditions in which it was obvious to any lay person that he had sustained significant injuries from the force that was used against him by the prison guards.

253.

Defendants were aware from their continued observations of Mr. Washington that his medical condition continued to worsen and that there was an escalating need for medical treatment, and further that if Mr. Washington did not receive medical treatment for his injuries there was a significant risk of serious bodily harm or death.

254.

Defendants were aware of Mr. Washington's medical condition during the relevant time period, specifically that Mr. Washington had been physically beaten by multiple guards and sustained injuries from the numerous forceful kicks, punches, and dragging, was left immobile for an extended period of time in handcuffs and leg irons, had visible bleeding (with uncleaned/untreated wounds), bruising, skin discoloration, blisters, and edema, was screaming and crying out in pain, had pain throughout his body, had painful urination, was not eating for approximately 10 days, and had chemical agents used on him that were not washed off.

255.

Defendants further knew that Mr. Washington's condition was seriously medically deteriorating each day to the point he was left immobile on the floor, unresponsive, defecating and urinating on himself. Defendants knew that these injuries were serious bodily injuries that were contributing to his continued deterioration, and that they would lead to further serious bodily injury or death if left untreated. Despite having this knowledge and knowing the risk of failing to provide

or obtain proper medical care, Defendants failed to respond reasonably to address Mr. Washington's needs.

### 256.

The extent of Mr. Washington's injuries were so significant that it was obvious to a lay person that he had serious medical needs and that if he did not receive medical treatment for his injuries, there was a significant risk of serious bodily harm or death.

### 257.

The Defendants had a duty to ensure Mr. Washington had adequate medical care.

### 258.

The Defendants failed to obtain and/or provide Mr. Washington with adequate medical care.

### 259.

Defendants disregarded the significant risk of serious bodily harm or death to Mr. Washington by failing to obtain and/or provide needed medical treatment to Mr. Washington.

### 260.

Defendants disregarded the significant risk of serious bodily harm or death to Mr. Washington by delaying in obtaining and/or providing needed medical treatment to Mr. Washington.

### 261.

Defendants' actions exhibited deliberate indifference to the safety and well-being of Mr. Washington and subjected him to the unnecessary and wanton infliction of severe pain, which constituted cruel and unusual punishment.

262.

Defendants were deliberately indifferent to Mr. Washington serious medical needs in at least the following ways:

a.  Defendants denied Mr. Washington access to a medical facility appropriate for his serious medical needs;

b.  Defendants denied Mr. Washington access to medical personnel qualified to treat his serious medical needs;

c.  Defendants failed to inquire into the essential facts that were necessary to make a judgment about Mr. Washington serious medical needs;

d.  Defendants caused factors unrelated to inmates' medical needs to interfere with the exercise of judgment regarding Mr. Washington serious medical needs; and

e.  Defendants failed to properly evaluate Mr. Washington's changing condition;

f.  Defendants failed to properly evaluate Mr. Washington's deteriorating condition;

g.  Defendants allowed Mr. Washington's evolving deteriorating condition to be untreated for at least eight days without proper intervention and treatment;

h.  Defendants failed to provide or obtain timely and proper medical intervention and treatment to Mr. Washington when it was obvious to a lay person he as in need of medical intervention and treatment.

263.

Defendants' knowledge of Mr. Washington's obvious, serious medical needs constitutes actual knowledge of an objectively cruel condition.

264.

Defendants were aware of Mr. Washington's symptoms and that they indicated he was in severe medical distress, and further knew that the failure to provide or obtain proper medical treatment would result in him experiencing life threatening permanent injury.   Defendants failed to provide Mr. Washington with appropriate care despite being aware of these risks.

265.

Defendants' failure to provide medical care for Mr. Washington's obvious, serious medical needs was an objectively unreasonable response to a known, substantial risk.

266.

Defendants' actions and inactions caused Mr. Washington to be deprived of his right to adequate medical care secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

267.

Accordingly, the Defendants' deliberate indifference to Mr. Washington's serious medical needs constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

268.

As a direct and proximate result of the Defendants' deliberate indifference to Mr. Washington's serious medical needs, Mr. Washington suffered medical expenses, physical injuries, pain and suffering, reduced earning capacity, and mental and emotional distress.

269.

Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violations of Plaintiff's constitutional rights under color of law.

**COUNT IV**
**42 U.S.C. § 1983: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS**
**Deliberate Indifference through Credentialing/Training/Supervision/Retention**
**(DEFENDANTS CORECIVIC)**

270.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

271.

This count is alleged against the CoreCivic Defendants.

272.

The CoreCivic Defendants have a duty to establish and operate in accordance with the rights guaranteed to citizens under the Constitution of the United States.

273.

The CoreCivic Defendants, acting under color of state law, were responsible for Mr. Washington's care, and were obligated to provide adequate care, custody, security and medical services at WCF.

274.

The CoreCivic Defendants have a duty to train their employees, staff, and agents and establish policies that protect the rights guaranteed to citizens under the Constitution of the United States.

275.

The CoreCivic Defendants were involved in directing, procuring, and providing care for and custody of Mr. Washington.

276.

The CoreCivic Defendants were involved in promulgating and enforcing policies and procedures regarding the provision of care and custody that Mr. Washington received.

277.

The CoreCivic Defendants promulgated and enforced policies and procedures that caused WCF to have grossly insufficient qualified staff, space, and resources to provide constitutionally adequate care and custody to WCF inmates including Mr. Washington.

278.

The CoreCivic Defendants failed to train and/or otherwise establish that the individuals responsible for the provision of security, custody, and housing services had the requisite knowledge and expertise to provide such services without hands-on supervision and in failing to have adequate and appropriate safeguards to ensure that the provision of such services were handled and addressed appropriately.

279.

The CoreCivic Defendants failed to train and/or otherwise establish that various individuals responsible for and involved in the care of Mr. Washington had the requisite knowledge and expertise to attend, assess, evaluate, diagnose and treat such a patient/inmate without hands-on supervision and failed to have adequate and appropriate safeguards to ensure that the treatment of life-threatening conditions and/or conditions being the knowledge and expertise of their nurses, medical assistants and technicians and/or staff were handled and addressed by a physician or other appropriate medical personnel.

280.

The CoreCivic Defendants knew or should have known that their employees were not properly credentialed or trained to provided the required services described herein to Mr. Washington.

281.

The CoreCivic Defendants knew or should have known that their employees were failing to provide these services and/or negligently providing these services to Mr. Washington, but did nothing to correct the negligent actions or omissions.

282.

WCF staff had used excessive force against and provided inadequate medical care to WCF inmates on prior occasions.

283.

The CoreCivic Defendants were aware that WCF staff had used excessive force against and provided inadequate medical care to WCF inmates on prior occasions.

284.

The CoreCivic Defendants knew their policies and procedures caused their employees to use excessive force against and provide inadequate medical care to WCF inmates on prior occasions.

285.

The CoreCivic Defendants knew their policies and procedures caused their employees to use excessive force against and provide inadequate medical care to WCF inmates, specifically Mr. Washington, and did not attempt to remedy the problem.

286.

The CoreCivic Defendants knew their policies and procedures caused their employees to use excessive force against and provide inadequate medical care Mr. Washington.

287.

The policies and procedures of CoreCivic Defendants were the driving force behind the WCF staff's use of excessive force against and provision of no or inadequate medical care to Mr. Washington.

288.

The CoreCivic Defendants were responsible for training and supervising security staff involved in the care and custody of inmates, specifically Mr. Washington, at WCF.

289.

The CoreCivic Defendants knew or reasonable people in their positions would know that their failure to train and supervise reflected deliberate indifference to their inmates.

290.

The CoreCivic Defendants' response to their employees' failure to provide care and security to its inmates was an objectively unreasonable response to a known, substantial risk.

291.

Accordingly, The CoreCivic Defendants deliberate indifference to Mr. Washington's care and safety constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth and Fourteenth Amendments.

292.

The CoreCivic Defendants actions and inactions caused Mr. Washington to be deprived of his right to be free from cruel and unusual punishment secured by the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

293.

As a direct and proximate result of The CoreCivic Defendants' violation of his rights, Mr. Washington suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

294.

As a direct and proximate result of The CoreCivic Defendants' violation of his rights, Mr. Washington suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

**COUNT V**
**O.C.G.A. §§ 51-1-13 and 51-1-14 STATE LAW CLAIMS – ASSAULT AND BATTERY/EXCESSIVE FORCE**

295.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

296.

This count is alleged against the following named Defendants: CoreCivic, Inc., CoreCivic of Tennessee, LLC, Bianca Mack, Benita Stegall, Charlie Williams, Clarissa Brown, Deja Eady, Karen Shepherd, Katianna Hall, Lenard Harris, Moranda Williams, Patricia Wilson, Qiana Mobley, Raven Wise, and Tyesha Edmond, collectively referred to as "the Count V Defendants."

297.

The Count V Defendants used force against Mr. Washington on February 8, 2023 during the 5:15 pm incident.

298.

The Count V Defendants used force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained.

299.

The Count V Defendants used gratuitous force against Mr. Washington on February 8, 2023 during the 5:15 pm incident after Mr. Washington was restrained.

300.

The Count V Defendants subjected Mr. Washington to a substantial risk of physical harm and unnecessary pain, given the force of the punches and kicks, use of chemical spray (without washing it off), tightness of the restraints, the length of time restrained, and his nakedness, particularly when all of this continued to occur after he was restrained and subdued.

301.

The use of force was for the purpose of retaliation or punishment, not to maintain discipline or for protective reasons.

302.

The Count V Defendants were aware that Mr. Washington was at a substantial risk of serious bodily harm through their use of force.

303.

The Count V Defendants disregarded that substantial risk of serious bodily harm and proceed to use of force beyond which was required to maintain discipline or for protective reasons.

304.

The Count V Defendants committed assault and battery against Plaintiff in violation of O.C.G.A. §§ 51-1-13 and 51-1-14 when they violently assaulted Plaintiff beyond which was required to maintain or restore discipline, particularly after Mr. Washington was subdued by handcuffs.

305.

The Count V Defendants committed assault and battery against Plaintiff in violation of O.C.G.A. §§ 51-1-13 and 51-1-14 when they violently assaulted Plaintiff beyond which was required to maintain or restore discipline, particularly after Mr. Washington was subdued by handcuffs.

306.

The Count V Defendants committed assault and battery against Plaintiff in violation of O.C.G.A. §§ 51-1-13 and 51-1-14 when they allowed other CoreCivic prison security guards to violently assault Plaintiff beyond which was required to maintain or restore discipline, particularly after Mr. Washington was subdued by handcuffs.

307.

Plaintiff claims damages for the injuries set forth above under O.C.G.A. §§ 51-1-13 and 51-1-14 against Defendants for violations of Plaintiff's rights under Georgia law

308.

As a direct and proximate result of these acts by the Count V Defendants, Plaintiff's suffered serious and permanent injuries.

## COUNT VI
## CLAIM UNDER GEORGIA LAW FOR MEDICAL MALPRACTICE

309.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

310.

This count is alleged against the following named Defendants: Corecivic, Inc., Corecivic of Tennessee, LLC; Danielle McGuire; Cathy Holmes; Christopher Smith; Margene Ricks; William Vinson, Jr.; Lacey Wilkes; Heather Smith; Earnest Smith; Calvin Stephens; Padmavathi Geddam, collectively referred to as "the Count VI Defendants."

311.

At all times relevant, the individual Count VI Defendants were employees/ agents of the CoreCivic Defendants acting in the course and scope of their employment/agency.  As such, the CoreCivic Defendants are liable for their negligence under the doctrine of *Respondeat* Superior.

312.

The Count VI Defendants personally examined Mr. Washington under conditions in which it would be obvious to a medical professional that Mr. Washington had serious medical needs and they did not respond reasonably to the risk.

313.

The Count VI Defendants were aware of Mr. Washington's medical condition during the relevant time period, specifically that Mr. Washington had been physically beaten by multiple guards and sustained injuries from the numerous kicks, punches, dragging, was left immobile for an extended period of time in handcuffs and leg irons, had visible bleeding (with uncleaned/untreated wounds), bruising, skin discoloration, blisters, and edema, was screaming and

crying out in pain, had pain throughout his body, had painful urination, was not eating for approximately 10 days, and had chemical agents used on him that were not washed off.

314.

The Count VI Defendants further knew that Mr. Washington's condition was deteriorating each day to the point where he was left immobile on the floor, unresponsive, defecating and urinating on himself. CoreCivic knew that these injuries were series bodily injuries that were contributing to his continued deteriorating, and that they could lead to further serious bodily injury or death if left untreated. Despite having this knowledge and knowing the risk of failing to provide proper medical care, the Count VI Defendants failed to respond reasonably to address Mr. Washington's needs.

315.

The Count VI Defendants had actual knowledge that Mr. Washington was experiencing symptoms of a life-threatening conditions that would lead to serious injury or death if left untreated. Despite having this knowledge and knowing the risk of failing to obtain or provide proper medical care, the Count VI Defendants failed to provide or obtain the proper medical care. The Count VI Defendants failed to respond reasonably to address Mr. Washington's needs.

316.

The injuries sustained by Mr. Washington were a direct and proximate result of The Count VI Defendants' negligent conduct, specifically their failure to appropriately assess, monitor, diagnose, respond to and manage Mr. Washington's injuries and seriously deteriorating condition. These Count VI Defendants were negligent in their care and treatment of Mr. Washington. The Count VI Defendants' negligence includes at least the following:

A. Failing to properly evaluate and treat all puncture wounds to Mr. Washington's stomach and chest immediately following the February 8, 2023 11:30 AM incident before medically clearing him for segregation. Moreover, Mr. Washington should not have been cleared for segregation without proper medical evaluation and treatment of wounds. CoreCivic staff should have administered or otherwise obtained proper medical evaluation and treatment of his wounds;

B. Failing to properly evaluate and treat all of Mr. Washington's injuries immediately following the use of force incident that occurred February 8, 2023 at approximately 5:15 PM. Moreover, proper medical evaluation and treatment should have been administered even though Mr. Washington purportedly "refused." Moreover, Mr. Washington should not have been medically cleared without proper medical evaluation and treatment of wounds. CoreCivic staff should have administered or otherwise obtained proper medical evaluation and treatment of his wounds;

C. Failing to immediately clean Mr. Washington's open wounds or wash the chemical agent off of him;

D. Failing to prevent Mr. Washington's access to an illegal and/or caustic substance while incarcerated, particularly while in segregation, and/or remove access to an illegal and/or caustic substance once it becomes reasonably apparent he has/had access to such substance;

E. Failing to timely remove, or cause to be removed, restrictions on Mr. Washington's mobility, including the handcuffs and leg irons, to minimize the risk of further injury, including but not limited to blood clot formation, open wounds, sepsis, and development of pulmonary embolisms;

59

F.  Failing to properly assess and evaluate Mr. Washington for blood clots or pulmonary embolisms, particularly after an extended period of immobility, and/or being at an increased risk of having blood clots and, thereby, pulmonary embolisms;

G.  Failing to properly evaluate and treat Mr. Washington during the constant watch period that followed the February 8, 2023 incidents, a period of time during which it was known he had sustained injuries during both February 8, 2023 incidents and that he was exhibiting "bizarre behaviors;"

H.  Failing to properly assess and evaluate Mr. Washington's deteriorating condition;

I.  Allowing Mr. Washington's evolving deteriorating condition to be untreated for several days without proper medical intervention and treatment;

J.  Failing to provide or obtain timely and proper medical intervention and treatment for Mr. Washington's deteriorating condition; and

K.  Failing to timely and properly implement hunger strike protocol measures.

317.

The standard of care required the Count VI Defendants and each of their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Washington to:

A.  Properly evaluate and treat all puncture wounds to Mr. Washington's stomach and chest immediately following the February 8, 2023 11:30 AM incident before medically clearing him for segregation;

B.  Properly evaluate and treat all of Mr. Washington's injuries immediately following the use of force incident that occurred February 8, 2023 at approximately 5:15 PM;

C.  Properly clean all open wounds to prevent infection;

D.  Properly wash the chemical agent off Mr. Washington;

E.  Prevent Mr. Washington's access to an illegal and/or caustic substance while incarcerated, particularly while in segregation, and/or remove access to an illegal and/or caustic substance once it becomes reasonably apparent he has/had access to such substance;

F.  Remove, or cause to be removed, restrictions on Mr. Washington's mobility, including the handcuffs and leg irons, to minimize the risk of further injury, including but not limited to open wounds, sepsis, blood clot formation, and development of pulmonary embolisms;

G.  Properly assess and evaluate Mr. Washington for blood clots and, thereby, pulmonary embolisms, particularly after an extended period of immobility, and/or being at an increased risk of having blood clots and, thereby, pulmonary embolisms;

H.  Properly evaluate and treat Mr. Washington during the constant watch period that followed the February 8, 2023 incidents, a period of time during which it was known he had sustained injuries during both February 8, 2023 incidents and that he was exhibiting "bizarre behaviors;"

I.  Properly assess and evaluate Mr. Washington's deteriorating condition;

J.  Provide or obtain timely and proper medical intervention and treatment for Mr. Washington's deteriorating condition; and

K.  Timely and properly implement hunger strike protocol measures

318.

The failure of the Count VI Defendants to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Washington.

319.

Had the Count VI Defendants adhered to the standard of care as outlined above, Mr. Washington would not have experienced his injuries.

320.

The Count VI Defendants' negligent and/or reckless failure to provide proper medical care despite knowing Mr. Washington was experiencing a potentially lethal injuries posed an unreasonable risk of serious injury to his health and safety.

321.

As a direct and proximate result of The Count VI Defendants' negligence, Mr. Washington suffered the injuries described herein requiring significant medical treatment, lifelong medical therapy and potentially a reduction in life expectancy and quality of life, pain and suffering, and lost earnings capacity.

322.

The CoreCivic Defendants were also negligent in their supervision of their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Washington's care with whom they had delegated aspects of the inmates' care. Such negligence includes but is not limited to the assignment of patient management without immediate supervision of residents and staff lacking expertise to properly assess, diagnose, monitor and manager their inmates/patients' condition.   Mr. Washington's injuries were proximately caused by both the active and passive negligence of the CoreCivic Defendants.

323.

The negligence of The Count VI Defendants included the failure to promptly and accurately communicate Mr. Washington's clinical presentation to the appropriate decision makers.

324.

Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff attaches as Exhibit 2 and incorporates by reference herein the affidavit of Emil A. Dameff, M.D., CCHP, a duly qualified physician competent to testify in this matter, alleging at least one act of negligence by each medical defendant, and thus fulfilling the requirements of O.C.G.A. § 9-11-9.1.

**COUNT VII**
**CLAIM UNDER GEORGIA LAW FOR NEGLIGENT**
**CREDENTIALING/TRAINING/SUPERVISION/RETENTION**

325.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

326.

This Count is alleged against the CoreCivic Defendants.

327.

The CoreCivic Defendants had a duty to properly credential, train, and supervise the individuals who provided security, custody, housing, and medical services to Mr. Washington

328.

The CoreCivic Defendants failed to train and/or otherwise establish that the individuals responsible for the provision of security, custody, and housing services had the requisite knowledge and expertise to provide such services without hands-on supervision and in failing to

have adequate and appropriate safeguards to ensure that the provision of such services were handled and addressed appropriately.

329.

The CoreCivic Defendants failed to train and/or otherwise establish that various individuals responsible for and involved in the care of Mr. Washington had the requisite knowledge and expertise to attend, assess, evaluate, diagnose and treat such a patient/inmate without hands-on supervision and failed to have adequate and appropriate safeguards to ensure that the treatment of life-threatening conditions and/or conditions being the knowledge and expertise of their nurses, medical assistants and technicians and/or staff were handled and addressed by a physician or other appropriate medical personnel.

330.

The CoreCivic Defendants knew or should have known that their employees were not properly credentialed or trained to provide the required services described herein to Mr. Washington.

331.

The CoreCivic Defendants knew or should have known that their employees were failing to provide these services and/or negligently providing these services to Mr. Washington but did nothing to correct the negligent actions or omissions.

332.

The CoreCivic Defendants were negligent in their credentialing of the individuals who provided care to Mr. Washington, and in their continued retention and failure to train and supervise them.

333.

As a direct and proximate result of the negligence of the CoreCivic Defendants, Mr. Washington suffered serious and permanent injuries, medical costs, pain and suffering, limited earnings capacity, and emotional distress.

**COUNT VIII**
**(ALL DEFENDANTS)**
**ORDINARY NEGLIGENCE**

334.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

335.

Defendants, whether themselves or through their agents, employees, at all times relevant to this Complaint had a duty to provide services to Mr. Washington, including but not limited to safe housing, custody, and medical care.

336.

Defendants, whether themselves or through their agents, employees, or personnel, had a duty to exercise ordinary and reasonable care in their provision of services to Mr. Washington.

337.

The Defendants failed to exercise ordinary and reasonable care in their provision of services to Mr. Washington.

338.

Defendants created the harmful situation that caused Mr. Washington's injuries and then failed to adequately remedy that harm by providing or obtaining adequate medical care.

339.

As a direct and proximate result of the ordinary negligence committed by the Defendants, whether themselves directly or through their agents, employees, or personnel, Mr. Washington suffered injuries, physical and mental pain and suffering, including, without limitation, the pain and suffering caused by the events laid out above.

340.

Accordingly, Plaintiff is entitled to recover damages for the pain and suffering, medical expenses, and loss past and future earnings incurred as a result of the ordinary negligence of the Defendants.

**COUNT IX**
**(CORECIVIC DEFENDANTS)**
**NUISANCE**

341.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

342.

The CoreCivic Defendants have continuously and knowingly provided inadequate security, housing, and medical care services to its inmates.

343.

The CoreCivic Defendants had knowledge that the failure to provide adequate security, housing, and medical services to inmates constituted a dangerous condition that would cause imminent and likely harm to inmates.

344.

Despite such knowledge, the CoreCivic Defendants failed to take any action to correct the conditions, thereby maintaining conditions in which violent attacks, unsafe housing and custody, and inadequate medical care continued to be provided.

345.

The CoreCivic Defendants' failure to take corrective action and thereby continuing to provide conditions in which violent attacks, unsafe housing and custody, and inadequate medical care continued to be provided, and with knowledge of imminent and likely harm to inmates, exceeds the concept of mere negligence.

346.

The CoreCivic Defendants' actions, and failure to take corrective action constituted a continuing nuisance.

347.

As a direct and proximate result of the continuing nuisance created by the CoreCivic Defendants, Mr. Washington suffered medical expenses, physical injuries, pain and suffering, and mental and emotional distress.

## COUNT X
## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

348.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

349.

Defendants intentionally and/or negligently inflicted emotional distress on Plaintiff by causing bodily harm and withholding or delaying the provision of proper medical care for at least eight days, allowing him to suffer in pain and agony for the duration of the time. Defendants were aware of the conditions they created and caused the suffering and medical deterioration to occur and continue. This resulted in physical and psychological injuries and emotional distress.

350.

The intentional and/or reckless conduct of Defendants was extreme and outrageous.

351.

A causal connection exists between the intentional and/or reckless and/or negligent conduct Defendants and Plaintiff's resulting physical and psychological injuries and emotional distress.

352.

The resulting physical and emotional harm was and continues to be so severe that no reasonable person could be expected to endure it.

## COUNT XI
## PUNITIVE DAMAGES
## (ALL DEFENDANTS)

353.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

354.

Defendants' conduct as described above was reckless, willful, and wanton, and demonstrates a conscious indifference to the consequences of his actions and entitles Plaintiff to an award of punitive damages.

## COUNT XII
## RECOVERY OF EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11 and
## 42 U.S.C. § 1988 AND OTHER APPLICABLE LAWS
## (ALL DEFENDANTS)

355.

Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs of this Complaint above as if fully restated.

356.

Defendants have acted in bad faith, have been stubbornly litigious and have caused the Plaintiff unnecessary trouble and expense in the defense of this action.

357.

Plaintiff is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988 for having to institute this proceeding.

## JURY DEMAND

358.

Plaintiff hereby demands that all issues be tried by a jury of twelve persons.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court award the following relief from Defendants:

a) An award of compensatory damages in an amount to be proven at trial, including interest;

b) An award of punitive damages in favor of Plaintiffs against all Defendants;

c) Reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and Georgia law;

d) All costs of court;

e) Plaintiff have a trial by jury; and

f) Such other and further relief as the Court may deem just and proper.


This 22nd day of January, 2025.

<div style="margin-left: 45%;">PAYNE & DU TOIT</div>
<div style="margin-left: 45%;">/s/ Catherine Payne</div>

2275 Marietta Blvd NW          Catherine D. Payne
Ste. 270-245                   Georgia Bar No. 463911
Atlanta, GA 30318-2019         Anne Marie du Toit
404-850-5000                   Georgia Bar No. 213320
cpayne@pdtfirm.com             *Attorneys for Plaintiff*
adutoit@pdtfirm.com

# EXHIBIT 1



# PAYNE
# & DU TOIT

2275 Marietta Blvd NW
Ste. 270-245
Atlanta, GA 30318-2019
www.pdtfirm.com

Catherine D. Payne                    Phone: 404-850-5000                    cpayne@pdtfirm.com
                                      Fax: 404-777-5807

*Via Certified Mail, Return Receipt Requested*

December 18, 2023

Georgia Department of Corrections
7 MLK Jr. Drive, Suite 543
Atlanta, GA 30334

Georgia Department of Corrections
300 Patrol Road
Forsyth, GA 31029

Tyrone Oliver, Commissioner
Georgia Dept. of Corrections
7 MLK Jr. Drive, Suite 543
Atlanta, GA 30334

CoreCivic, Inc.
c/o Russell Clark, Registered Agent
4 West Railroad Ave
Alamo, GA 30411

Georgia Department of Administrative Services
Risk Management Division
200 Piedmont Avenue SE
Suite 1804, West Tower
Atlanta, GA 30334

Wade Damron, Director
Georgia Department of Administrative Services
Risk Management Division
200 Piedmont Avenue SE
Suite 1804, West Tower
Atlanta, GA 30334

Wheeler Correctional Facility
195 N Broad St
Alamo, GA 30411

Wheeler Correctional Facility
P.O. Box 466
Alamo, GA 30411

Warden Shawn Gillis
Wheeler Correctional Facility
195 N Broad St
Alamo, GA 30411

Wheeler County
c/o Wheeler County Board of Commissioners
20 Forest Avenue
Alamo, GA 30411

Wheeler County
c/o Wheeler County Board of Commissioners
PO Box 654
Alamo, GA 30411

Rochelle Culver
Wheeler County Commissioner of District 1
20 Forest Avenue
Alamo, GA 30411

Keith McNeal
Wheeler County Commissioner Chairman
20 Forest Avenue
Alamo, GA 30411

Elaine T. Clark
Wheeler County Clerk/Finance Officer
20 Forest Avenue
Alamo, GA 30411

Sheriff Randy Rigdon
Wheeler County Sheriff's Office
21 Forest Avenue
Alamo, GA 30411

Danny Clark
Wheeler County Commissioner of District 2
20 Forest Avenue
Alamo, GA 30411

Wheeler County Sheriff's Dept & Jail Facility
21 Forest Avenue
Alamo, GA 30411

Devin Trelorenz Washington
Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
December 18, 2023
Page 2

## ANTE LITEM NOTICE (NOTICE OF CLAIM)
## PURSUANT TO O.C.G.A. §§ 36-11-1, 50-21-26

**Claimants**          Devin Trelorenz Washington

**Date of Loss**          Approximately February 8, 2023 through February 16, 2023

**Place of Injury**          Wheeler Correctional Facility, 195 N Broad St, Alamo, GA 30411

**Cause of Injury**          Due to the negligent and intentional actions of Wheeler Correctional
Facility and the employees, agents, volunteers, temporary workers,
medical doctors, nurses, medical assistants, and/or technicians that
were working at the location of the incident in February 2023, Devin
Trelorenz Washington (1) was brutally attacked with unjustified and
excessive force; (2) was denied medical care when it was known he
was significantly injured as a result of the attack (3) was directed to
take drugs that were known to cause injury to him, (4) received delayed
treatment when it was known he was significantly injured as a result
of the attack, (5) was provided medical care that deviated from that
degree of skill and care which, under similar conditions and like
surrounding circumstances, is ordinarily employed by medical
doctors, nurses, medical assistants, and technicians.

Mr. Washington further alleges his injuries were caused by the policies
and procedures of the Georgia Department of Corrections, CoreCivic,
Inc., Wheeler Correctional Facility, Wheeler County, Sheriff Randy
Rigdon, and the Wheeler County Sheriff's Department of: (1)
encouraging and/or failing to stop the use of excessive force against
inmates, (2) failing to timely respond to known medical need where
serious bodily injury is known to have occurred; (2) allowing
overcrowding and understaffing at the Facility; and (3) failing to
provide sufficient medical staff and equipment at the Facility.  See
below for more information on the facts of the occurrence and the
injuries.

**Extent of Injury**          Diagnoses included two duodenal perforations, pulmonary embolism,
purpura, vesicular lesion, sepsis, acute kidney injury, and heart failure.
Mr. Washington's injuries have not fully resolved, and the cardiac
damage is believed to be permanent.

**Amount of Claim**          $10,000,000

Devin Trelorenz Washington
Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
December 18, 2023
Page 3

To Whom It May Concern:

Please be advised that this firm represents Devin Trelorenz Washington, GDC ID 10010692350 ("Mr. Washington"). This letter shall serve as notice of personal injury claims arising out of the events that occurred while Mr. Washington was in custody at the Wheeler Correctional Facility, 195 N Broad St, Alamo, GA 30411 ("The Facility") earlier this year.

On or about February 8, 2023, while in custody at the Facility in segregation, Mr. Washington was brutally attacked by prison guards while in handcuffs and consumed drugs under the instruction of Facility staff, which caused him to suffer significant bodily injury as a result. This is believed to have resulted in the creation of GA DOC Incident Report No. 362866 dated 2/8/2023 17:15. After the attack Mr. Washington was left in a strip cell for an extended period of time with no medical treatment. Finally, after withholding medical treatment for approximately 8 days, on or about February 16, 2023, Faculty staff took Mr. Washington to Augusta State Medical Prison where he was assessed and sent to August University Medical Center for treatment. His diagnoses included two duodenal perforations, pulmonary embolism, purpura, vesicular lesion, sepsis, acute kidney injury, and heart failure. Mr. Washington's injuries have not fully resolved, and the cardiac damage is believed to be permanent. He has been placed at higher risk for cardiac arrest and shortened lifespan.

This notice of claim is being sent in compliance with and pursuant to O.C.G.A. § 50-21-26 and O.C.G.A.§ 36-11-1. This writing is in full satisfaction of the notice requirements under Georgia law. The statutes provide that "Notice of a claim shall be given in writing within 12 months of the date the loss was discovered or should have been discovered." *Id*.

This letter shall serve as formal presentation, in writing, of the claims of Devin Trelorenz Washington. In accordance with O.C.G.A. § 50-21-26, a copy of this notice is being presented to the state government entity, the act or omissions of which are asserted as the basis of the claim. The notice is presented to the governing authority of the Georgia Department of Corrections, The Georgia Department of Administrative Services—Risk Management Division, CoreCivic, Inc., Wheeler Correctional Facility, Wheeler County, Sheriff Randy Rigdon, and the Wheeler County Sheriff's Office pursuant to O.C.G.A. § 50-21-26 and O.C.G.A.§ 36-11-1.

Consistent with O.C.G.A. § 50-21-26, the following information (in addition to other information contained herein) is provided to the extent of the claimant's knowledge and belief:

(A)    **The name of the state government entity, the acts or omissions of which are asserted as the basis of the claim:** Georgia Department of Corrections, CoreCivic, Inc., Wheeler Correctional Facility, Wheeler County, Sheriff Randy Rigdon, and the Wheeler County Sheriff's Office and any employees, agents, volunteers, temporary workers, emergency medicine doctors, nurses, medical assistants, and/or technicians of these entities that were working at the location of the incident during February 2023.

(B)    **The time of the transaction or occurrence out of which the loss arose:** Approximately February 8, 2023 through February 16, 2023.

3

Devin Trelorenz Washington
Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
December 18, 2023
Page 4

(C)    **The place of the transaction or occurrence:** Wheeler Correctional Facility, 195 N Broad St, Alamo, GA 30411

(D)    **The nature of the loss suffered:** Mr. Washington was brutally attacked by prison guards while in handcuffs and consumed drugs under the instruction of Facility staff, which caused him to suffer significant bodily injury as a result. Medical treatment was withheld. Mr. Washington failed to receive timely and appropriate medical treatment even though it was known he was significantly injured in the brutal attack. When he was finally provided delayed medical treatment, his diagnoses included two duodenal perforations, pulmonary embolism, purpura, vesicular lesion, sepsis, acute kidney injury, and heart failure. Mr. Washington's injuries have not fully resolved, and the cardiac damage is believed to be permanent. The nature of the losses in this claim includes all claims which can be brought by Mr. Washington for the events that occurred to him from approximately February 8-16, 2023, at the Wheeler Correctional Facility. This includes claims for physical and mental pain and suffering, shock, fright, anxiety, worry, personal injury, medical expenses, and other necessary expenses resulting from his injuries.

(E)    **The amount of the loss claimed:** At this time, Mr. Washington values the total value of his claim, which includes a claim for medical expenses and physical and mental pain and suffering, shock, fright, anxiety, worry, personal injury, and other necessary expenses resulting from his injuries, at $10,000,000.

(F)    **The acts or omissions which caused the loss include:** (1) use of unjustified and excessive force by Facility staff against Mr. Washington, (2) failure to protect Mr. Washington from the use of excessive force by Facility staff, (3) denying and delaying Mr. Washington medical care when it was known he was significantly injured as a result of the attack (4) directing Mr. Washington to take drugs that were known to cause injury to him, (5) providing Mr. Washington medical care that deviated from that degree of skill and care which, under similar conditions and like surrounding circumstances, is ordinarily employed by medical doctors, nurses, medical assistants, and technicians. Mr. Washington further alleges his injuries were caused by the policies and procedures of the Georgia Department of Corrections, CoreCivic, Inc., Wheeler Correctional Facility, Wheeler County, and the Wheeler County Sheriff's Department of: (1) encouraging and/or failing to stop the use of excessive force against inmates, (2) failing to timely respond to known medical need where serious bodily injury is known to have occurred; (2) allowing overcrowding and understaffing at the Facility; and (3) failing to provide sufficient medical staff and equipment at the Facility. See the top of this letter for more information on the facts of the occurrence and the injuries.

Claimants reserve the right to amend this notice as more details become available, and to pursue other theories of liability or allege other acts or omissions involving Georgia Department of Corrections, CoreCivic, Inc., Wheeler Correctional Facility, Wheeler County, and Sheriff Randy Rigdon, the Wheeler County Sheriff's Office, and any employees, agents, volunteers, temporary workers, medicine doctors, nurses, medical assistants, and/or technicians of these entities that were working at the location of the incident during February 8, 2023 through February 16, 2023.

Devin Trelorenz Washington
Ante Litem Pursuant to O.C.G.A. § 36-11-1 and 50-21-26
December 18, 2023
Page 5

Respectfully submitted,

PAYNE & DU TOIT

Catherine D. Payne, Esq.

*Attorneys for Claimant Devin Trelorenz*
*Washington*

**U.S. Postal Service**
**Certified Mail Receipt**

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 4956 20
RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 4956 00

ARTICLE ADDRESSED TO:

Georgia Department of Corrections
7 MLK Jr. Drive, Suite 543
7 Martin Luther King Jr Dr Sw
Atlanta GA 30334-5400

FEES
Postage per piece        $1.110
Certified Fee             $4.350
Return Receipt Fee        $3.550
Total Postage & Fees:     $9.010

Postmark
Here

Devin
Washington

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Georgia Department of Corrections
7 MLK Jr. Drive, Suite 543
7 Martin Luther King Jr Dr Sw
Atlanta GA 30334-5400

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( □ Addressee or ☒ Agent)
X _Andrew L. Tippett_

B. Received By: (Printed Name)      C. Date of Delivery
Andrew L. Tippett                    1/9/24

D. Is delivery address different from item 1? ☒ Yes
If YES, enter delivery address below: □ No

300 Patrol Rd.
Forsyth, GA
31029

3. Service Type
☑ Certified Mail®

2. Article Number (Transfer from service label)
9414 7112 0620 4447 4956 20

9490 9112 0620 4447 4956 00

PS Form 3811 Facsimile, July 2015 (SDC 3930)        Domestic Return Receipt

---

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 9557 72
RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 9557 16

ARTICLE ADDRESSED TO:

Georgia Department of Corrections
300 Patrol Rd
Forsyth GA 31029-1868

FEES
Postage per piece        $1.110
Certified Fee             $4.350
Return Receipt Fee        $3.550
Total Postage & Fees:     $9.010

Postmark
Here

Devin
Washington

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Georgia Department of Corrections
300 Patrol Rd
Forsyth GA 31029-1868

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( □ Addressee or □ Agent)
X

B. Received By: (Printed Name)      C. Date of Delivery
X

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

RECEIVED
DEC 2 1 2023
STATE OFFICES SOUTH @ TIFT COLLEGE
MAILROOM

3. Service Type
☑ Certified Mail®

9490 9112 0620 4447 9557 15

2. Article Number (Transfer from service label)
9414 7112 0620 4447 9557 72

PS Form 3811 Facsimile, July 2015 (SDC 3930)        Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tyrone Oliver, Commissioner
Georgia Dept. of Corrections
7 Mlk Jr Dr Sw Ste 543
Atlanta GA 30334-5400

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( □ Addressee or ☒ Agent)
X _Andrew L. Tippett_

B. Received By: (Printed Name)      C. Date of Delivery
Andrew L. Tippett                    1/9/24

D. Is delivery address different from item 1? ☒ Yes
If YES, enter delivery address below: □ No

300 Patrol Rd.
Forsyth, GA
31029

3. Service Type
☑ Certified Mail®

9490 9112 0620 4447 4263 07

2. Article Number (Transfer from service label)
9414 7112 0620 4447 4263 27

PS Form 3811 Facsimile, July 2015 (SDC 3930)        Domestic Return Receipt

**U.S. Postal Service Certified Mail Receipt**

ARTICLE ADDRESS TO:

Tyrone Oliver, Commissioner
Georgia Dept. of Corrections
7 Mlk Jr Dr Sw Ste 543
Atlanta GA 30334-5400

OUTBOUND TRACKING NUMBER
9490 9112 0620 4447 4283 27

RETURN RECEIPT TRACKING NUMBER
9414 7112 0620 4447 4283 07

FEES
Postage per piece
Certified Fee
Return Receipt Fee
Total Postage & Fees:

$1.110
$4.350
$3.550
$9.010

Postmark
Here

Devin Washington

---

ARTICLE ADDRESS TO:

CoreCivic, Inc.
c/o Russell Clark, Registered Agent
4 W Railroad Ave
Alamo GA 30411

OUTBOUND TRACKING NUMBER
9490 9112 0620 4447 9263 57

RETURN RECEIPT TRACKING NUMBER
9414 7112 0620 4447 9263 15

FEES
Postage per piece
Certified Fee
Return Receipt Fee
Total Postage & Fees:

$1.110
$4.350
$3.550
$9.010

Postmark
Here

Devin Washington

---

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CoreCivic, Inc.
c/o Russell Clark, Registered Agent
4 W Railroad Ave
Alamo GA 30411

9490 9112 0620 4447 9263 57

2. Article Number (Transfer from service label)
9414 7112 0620 4447 9263 15

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)
X Katheryn Robbins

B. Received By: (Printed Name)      C. Date of Delivery
Katheryn Robbins

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®

PS Form 3811 Facsimile, July 2015 (SDC 3930)      Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Georgia Department of Admin Service
Risk Management Division
200 Piedmont Ave Se Ste 1804 West Tower
Atlanta GA 30334-9030

9490 9112 0620 4447 6196 17

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6199 72

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)

B. Received By: (Printed Name)      C. Date of Delivery
SN                                  12-21-23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®

PS Form 3811 Facsimile, July 2015 (SDC 3930)      Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Georgia Department Admin Services
Attn: Risk Managment Division. Director
200 Piedmont Ave Se Ste 1804 WadeD
Atlanta GA 30334-9030

9490 9112 0620 4446 2380 55

2. Article Number (Transfer from service label)
9414 7112 0620 4446 2380 18

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐ Addressee or ☐ Agent)

B. Received By: (Printed Name)      C. Date of Delivery
SN                                  12-21-23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®

PS Form 3811 Facsimile, July 2015 (SDC 3930)      Domestic Return Receipt

**Certified Mail Receipt**

**U.S. Postal Service**

---

## Receipt 1

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Wheeler Correctional Facility**
**195 N Broad St**
**Alamo GA 30411-4055**

9490 9112 0620 4447 6120 38

2. Article Number *(Transfer from service label)*
9414 7112 0620 4447 6120 89

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X *Kaleigh S.*

B. Received By: *(Printed Name)*
*Kaleigh Shupe*

C. Date of Delivery
12/21/23

D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

*P.O. Box 466*
*Alamo GA 30411*

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 6199 72
**RETURN RECEIPT TRACKING NUMBER**
9490 9112 0620 4447 6195 17

**ARTICLE ADDRESS TO:**

Georgia Department of Admin Service
Risk Management Division
200 Piedmont Ave Se Ste 1804 *West Tower*
Atlanta GA 30334-9030

**FEES**

| | |
|---|---|
| Postage per piece | $1.110 |
| Certified Fee | $4.350 |
| Return Receipt Fee | $3.550 |
| Total Postage & Fees: | $9.010 |

Postmark
Here

*Devin Washington*

---

## Receipt 2

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Wheeler Correctional Facility**
**Po Box 466**
**Alamo GA 30411-0466**

9490 9112 0620 4447 9344 44

2. Article Number *(Transfer from service label)*
9414 7112 0620 4447 9344 95

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X *Kaleigh S.*

B. Received By: *(Printed Name)*
*Kaleigh Shupe*

C. Date of Delivery
12/21/23

D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 2380 13
**RETURN RECEIPT TRACKING NUMBER**
9490 9112 0620 4447 2380 06

**ARTICLE ADDRESS TO:**

Georgia Department Admin Services
Attn: Risk Management Division, Director
200 Piedmont Ave Se Ste 1804
Atlanta GA 30334-9030

**FEES**

| | |
|---|---|
| Postage per piece | $1.110 |
| Certified Fee | $4.350 |
| Return Receipt Fee | $3.550 |
| Total Postage & Fees: | $9.010 |

Postmark
Here

*Devin Washington*

---

## Receipt 3

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Warden Shawn Gillis**
**Wheeler Correctional Facility**
**195 N Broad St**
**Alamo GA 30411-4055**

9490 9112 0620 4447 6433 53

2. Article Number *(Transfer from service label)*
9414 7112 0620 4447 6433 11

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X *Kaleigh S.*

B. Received By: *(Printed Name)*
*Kaleigh Shupe*

C. Date of Delivery
12/21/23

D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

*P.O. Box 466*
*Alamo GA 30411*

3. Service Type
☑ Certified Mail®

Domestic Return Receipt



**U.S. Postal Service™ Certified Mail Receipt**

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 6120 89
RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 6120 38

ARTICLE ADDRESSED TO:

Wheeler Correctional Facility
195 N Broad St
Alamo GA 30411-4055

FEES
Postage per piece      $1.110
Certified Fee          $4.350
Return Receipt Fee     $3.550
Total Postage & Fees:  $9.010

Postmark Here

Devin Washington

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 5344 96
RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 5344 44

ARTICLE ADDRESSED TO:

Wheeler Correctional Facility
Po Box 466
Alamo GA 30411-0466

FEES
Postage per piece      $1.110
Certified Fee          $4.350
Return Receipt Fee     $3.550
Total Postage & Fees:  $9.010

Postmark Here

Devin Washington

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wheeler County
c/o Wheeler County Board of Commissioner
20 W Forest Ave
Alamo GA 30411-3537

9490 9112 0620 4447 6067 54

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6067 12

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (□ Addressee or □ Agent)
X
B. Received By: (Printed Name)    C. Date of Delivery
Keith McNeal    12-21-23

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:           □ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wheeler County
c/o Wheeler Board of Commisioners
Po Box 654
Alamo GA 30411-0654

9490 9112 0620 4447 6283 05

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6283 25

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (□ Addressee or □ Agent)
X
B. Received By: (Printed Name)    C. Date of Delivery
Keith McNeal    2-1-04

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:           □ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Rochelle Culver
Wheeler County Commisioner District 1
20 W Forest Ave
Alamo GA 30411-3537

9490 9112 0620 4447 6093 11

2. Ar

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (□ Addressee or □ Agent)
X
B. Received By: (Printed Name)    C. Date of Delivery
Keith McNeal    12-21-23

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:           □ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt



**Certified Mail Receipt**

U.S. Postal Service

**ARTICLE ADDRESSED TO:**

Warden Shawn Gillis
Wheeler Correctional Facility
195 N Broad St
Alamo GA 30411-4055

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 6433 11

RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 6433 53

**FEES**

Postage per piece
Certified Fee
Return Receipt Fee

Total Postage & Fees:

$1.110
$4.350
$3.550

$9.010

Postmark
Here

Devin
Washington

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Keith McNeal
Wheeler County Commissioner Chairman
20 W Forest Ave
Alamo GA 30411-3537

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9490 9112 0620 4447 6213 51

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6213 19

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature ( ☐ Addressee or ☐ Agent)
X

B. Received By: (Printed Name)     C. Date of Delivery
Keith McNeal                        12-21-23

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type

☑ Certified Mail®

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Elaine T. Clark
Wheeler County Clerk/Finance Officer
20 W Forest Ave
Alamo GA 30411-3537

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9490 9112 0620 4447 6852 09

2. Ar

PS Fo... ....... Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X

B. Received By: (Printed Name)     C. Date of Delivery
Keith McNeal                        12-21-23

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type

☑ Certified Mail®

Domestic Return Receipt

---

**ARTICLE ADDRESSED TO:**

Wheeler County
c/o Wheeler County Board of Commissioner
20 W Forest Ave
Alamo GA 30411-3537

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 6067 12

RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 6067 54

**FEES**

Postage per piece
Certified Fee
Return Receipt Fee

Total Postage & Fees:

$1.110
$4.350
$3.550

$9.010

Postmark
Here

Devin
Washington

---

**SENDER: COMPLETE THIS SECTION**

■ Ensure items 1, 2, and 3 are completed.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sheriff Randy Rigdon
Wheeler County Sheriff's Office
21 W Forest Ave
Alamo GA 30411-3536

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9490 9112 0620 4447 6557 21

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6557 65

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X Lillie Bellflower

B. Received By: (Printed Name)     C. Date of Delivery
Lillie Bellflower                   12-21-23

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type

☑ Certified Mail®

Domestic Return Receipt



**Certified Mail Receipt**

**U.S. Postal Service**

ARTICLE ADDRESS TO:

Rochelle Culver
Wheeler County Commisioner District 1
20 W Forest Ave
Alamo GA 30411-3537

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 6091 71

RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 6093 11

FEES
Postage per piece      $1.110
Certified Fee          $4.350
Return Receipt Fee     $3.550
Total Postage & Fees:  $9.010

Postmark
Here

Devin Washington

---

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Danny Clark
Wheeler County Commissioner District 2
20 W Forest Ave
Alamo GA 30411-3537

9490 9112 0620 4440 4076 62

2. Article Number (Transfer from service label)
9414 7112 0620 4440 4076 51

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X

B. Received By: (Printed Name)   C. Date of Delivery
Keith McNeal          12-21-23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Ensure items 1, 2, and 3 are completed.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wheeler County Sheriff's Dept & Jail
21 W Forest Ave
Alamo GA 30411-3536

9490 9112 0620 4447 6634 05

2. Article Number (Transfer from service label)
9414 7112 0620 4447 6634 25

PS Form 3811 Facsimile, July 2015 (SDC 3930)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)
X Lillie Bellflower

B. Received By: (Printed Name)   C. Date of Delivery
Lillie Bellflower    12-21-23

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail®

Domestic Return Receipt

---

**U.S. Postal Service**
**Certified Mail Receipt**

OUTBOUND TRACKING NUMBER
9414 7112 0620 4447 6283 25

RETURN RECEIPT TRACKING NUMBER
9490 9112 0620 4447 6283 05

FEES
Postage per piece      $1.110
Certified Fee          $4.350
Return Receipt Fee     $3.550
Total Postage & Fees:  $9.010

ARTICLE ADDRESS TO:

Wheeler County
c/o Wheeler Board of Commisioners
Po Box 654
Alamo GA 30411-0654

Postmark
Here

Devin Washington

## U.S. Postal Service
### Certified Mail Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 6214 19

**RETURN RECEIPT TRACKING NUMBER**
9690 9112 0620 4447 6213 61

**ARTICLE ADDRESS TO:**

Keith McNeal
Wheeler County Commissioner Chairman
20 W Forest Ave
Alamo GA 30411-3537

Postmark
Here

**FEES**
Postage per piece         $1,110
Certified Fee             $4,350
Return Receipt Fee        $3,550
**Total Postage & Fees:** $9,010

Devin
Washington

---

## U.S. Postal Service
### Certified Mail Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 6552 29

**RETURN RECEIPT TRACKING NUMBER**
9690 9112 0620 4447 6552 09

**ARTICLE ADDRESS TO:**

Elaine T. Clark
Wheeler County Clerk/Finance Officer
20 W Forest Ave
Alamo GA 30411-3537

Postmark
Here

**FEES**
Postage per piece         $1,110
Certified Fee             $4,350
Return Receipt Fee        $3,550
**Total Postage & Fees:** $9,010

Devin
Washington

---

## U.S. Postal Service
### Certified Mail Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 6557 66

**RETURN RECEIPT TRACKING NUMBER**
9690 9112 0620 4447 6557 21

**ARTICLE ADDRESS TO:**

Sheriff Randy Rigdon
Wheeler County Sheriff's Office
21 W Forest Ave
Alamo GA 30411-3536

Postmark
Here

Devin
Washington

U.S. Postal Service
Certified Mail Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4440 4076 51

**RETURN RECEIPT TRACKING NUMBER**
9490 9112 0620 4440 4076 62

**FEES**

| | |
|---|---|
| Postage per piece | $1.110 |
| Certified Fee | $4.350 |
| Return Receipt Fee | $3.550 |
| **Total Postage & Fees:** | **$9.010** |

**ARTICLE ADDRESS TO:**

Danny Clark
Wheeler County Commissioner District 2
20 W Forest Ave
Alamo GA 30411-3537

Postmark
Here

Devin
Washington

---

U.S. Postal Service
Certified Mail Receipt

**OUTBOUND TRACKING NUMBER**
9414 7112 0620 4447 6634 26

**RETURN RECEIPT TRACKING NUMBER**
9490 9112 0620 4447 6634 05

**FEES**

| | |
|---|---|
| Postage per piece | $1.110 |
| Certified Fee | $4.350 |
| Return Receipt Fee | $3.550 |
| **Total Postage & Fees:** | **$9.010** |

**ARTICLE ADDRESS TO:**

Wheeler County Sheriff's Dept & Jail
21 W Forest Ave
Alamo GA 30411-3536

Postmark
Here

Devin Washington

# EXHIBIT 2

STATE OF FLORIDA

COUNTY OF CHARLOTTE

### **AFFIDAVIT OF EMIL A. DAMEFF, M.D., CCHP**

I, Emil A. Dameff, M.D., CCHP, personally appeared before the undersigned officer duly authorized to administer oaths in the State of Florida, who having been duly sworn, depose and state as follows:

1.

My name is Emil A. Dameff, M.D., CCHP. I am over the age of twenty-one years, I suffer from no legal disabilities, and I make this Affidavit under oath based upon my own personal knowledge and review of the medical records of Devin T Washington ("Mr. Washington"), as well as my own professional knowledge, education, training, and experience outlined in my CV, attached hereto and incorporated herein by reference as Exhibit A. I am competent in all respects to testify regarding the matters set forth herein.

2.

After receiving my undergraduate degree from Southern College in Collegedale, Tennessee, I graduated with a medical degree from the University of Miami in 1991 and completed my internship in Internal Medicine at the University of Florida in 1992. I have been continuously licensed by the appropriate regulatory agency as a physician to practice medicine in the state of Florida since 1992 and have been continuously practicing medicine in Florida since that time.  I am actively engaged in private practice that includes rendering care and treatment to patients at ShorePoint Health Hospitals (Punta Gorda (Formerly Riverside) and Port Charlotte), where I have been regularly and actively working full time since December 1999.  I am on the ShorePoint Health Punta Gorda Board of Trustees.

3.

In February of 1993, I began my career in correctional medicine with the Florida Department of Corrections, working as a Clinic Coordinator and institutional Chief Health Officer before becoming a Regional Director of Health Care for the State of Florida. From 2001-2009 I was the Regional Medical Director for Wexford Health Sources Inc, heading multiple projects for the company, including development of the Computer-Assisted Reception Process (CARP) for the Florida Department of Corrections; a statewide Electronic Medical Record implementation for the Mississippi Department of Corrections; and the ongoing expansion of telemedicine for the West Virginia Division of Corrections. From 2009 to 2015 I served as the Corporate Medical Affairs Director for Wexford Health, where I lead the team responsible for establishing the company's medical protocols and directs the clinical decision making of our field Regional Medical Directors and staffs. Since 2015 I have been regularly serving as a consultant to correctional health care companies and providing medical services to inmates. I spend approximately 32 hours per week throughout the year directing medical care for and providing medical care directly to inmates. As a part of my daily responsibilities, I supervise and oversee the clinical practice of nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, and nurse practitioners.

4.

I have been continuously licensed as a Certified Correctional Health Professional since 2011, and currently maintain this certification.

5.

I have actual professional knowledge and experience in the area of practice in which my opinions are given as a result of having been regularly engaged in the active practice of such area

of specialty of my profession since 1992 and have been specifically providing medical services to inmates since 1993. Furthermore, for greater than three of the last five years prior to the negligence described below, I have been engaged in the active practice of medicine in the correctional health environment. I have been actively and regularly involved in diagnosing, assessing, planning for care, and treating inmates in the correctional health environment who suffer from the same or similar medical conditions as Mr. Washington while an inmate in the Wheeler Correctional Facility.

6.

From my background, training, and experience in the care and treatment of prisoners and inmates, I am familiar with the standards of care applicable to prisons and jails similar to Wheeler Correctional Facility. Additionally, as a member of the interdisciplinary care team, I regularly supervised and instructed nursing professionals in jails and prisons, including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and others in providing care and services to jail and prison inmates.

7.

Based on my education, training and experience I am familiar with that degree of care and skill ordinarily exercised by correctional facilities, nurses, nurses' aides, certified nursing assistants, registered nurses, licensed practical nurses, nurse practitioners, medical doctors, and others under similar conditions and like surrounding circumstances to those considered in this Affidavit. More specifically, I have actual professional knowledge and experience in connection with caring for inmates in a correctional facility, including but not limited to residents with the medical conditions and diagnoses experienced by Mr. Washington with sufficient frequency to

establish an appropriate level of knowledge described in this Affidavit. I am competent to give the opinions contained in this Affidavit.

8.

In connection with providing my opinions in this Affidavit, I have reviewed the following records pertaining to Mr. Washington in formulating my opinion:

A. Augusta University Medical Center medical records (2/16/2023 – 3/5/2023)

B. Wellpath medical records from Augusta State Medical Prison

C. Wellpath medical records from Baldwin State Prison

D. CorrectHealth Wheeler Correctional Facility medical records

A. 3-part inmate Georgia Department of Corrections file (redacted)

B. Department of Corrections Wheeler Correctional Facility Incident Report No. 362865

C. Department of Corrections Wheeler Correctional Facility Incident Report No. 362866

9.

As the factual basis for my opinions herein, based upon my review of the foregoing records, I have assumed the following facts to be true and the following is a brief overview of some of the pertinent events that occurred in this matter:

A. On February 8, 2023, Mr. Washington was an inmate at Wheeler Correctional Facility. On that date at approximately 11:30 am, CoreCivic Unit Manager Glynn Powell reportedly observed Mr. Washington brandishing a weapon. Mr. Washington was placed in hand restraints and escorted to Main Medical for a pre-segregation evaluation.

B. On February 8, 2023 at 11:31 am, Danielle McGuire, LPN conducted a 13-42A - Pre-Special Management - Restricted Housing Health Evaluation. The progress note includes her following comments: "Pt had dried bld on his shirt, admitted to smoking meth this AM,

6 small punctures noted to abd, 1 small puncture noted to left chest area, 3 hematomas noted to top of head, bruise noted to left cheek. Bleeding is controlled at this time. All punctures were superficial in nature. States 'I had to defend myself.'" Mr. Washington was cleared for the restricted housing unit. A corresponding "Facility Emergency Anatomical Form" was completed. The reason indicated on the form for the medical report was because of "injury" and "Pre-RHU/SHU admission." Christopher Smith, RN was notified of the assessment. Mr. Washington was then escorted to and housed in Segregation.

C. On February 8, 2023 at 3:07 PM, Ernest Smith, RN documented: Patient placed on constant watch per 1603 order from Dr. Reddy.

D. On February 8, 2023 at approximately 5:15 PM, CoreCivic employees entered Segregation and used force against Mr. Washington, including punches, kicks, and chemical spray, and the use of leg irons and handcuffs. They cut Mr. Washington's clothes off and dragged him around. They left him in the cell with the leg irons and handcuffs in place. No medical treatment was provided following this incident.

E. One February 8, 2023 at 6:25 PM, Margene Ricks RN completed a "Facility Emergency Anatomical Form." She documented that the report was completed because of the guards' use of force, that he was "reported to have" multiple puncture wounds as well as bruising and swelling on his head, and further that she did not conduct a medical evaluation of Mr. Washington because Mr. Washington "refused evaluation" and "refused vital signs." Ms. Ricks medically cleared Mr. Washington. No medical treatment was provided to Mr. Washington

F. On February 8, 2023 at 8:41pm, Margena Ricks, RN documented: 2020: Started hourly medical checks. I/M hollering out and beating head against cell hour [sic] and wall.

Questioned if he is ok, but I/M will not answer. No bleeding noted. Will continue hourly checks.

G. On February 9, 2023, Dr. Padmavathi Geddam ordered that the team implement suicide precautions with constant observation. (This same order is made by Dr. Geddam on February 10, 11, 14, and 15).

H. On February 9, 2023 at 1:18 pm, Mental Health Counselor Calvin Stephens conducted a Suicide Risk Assessment Interview 13-84A. Mr. Stephens reported that Mr. Washington was "brought to medical after having some bizarre behaviors in segregation. It was believed that the inmate was high on methamphetamine. Security had to spray the inmate to get him out of his cell and then he stated he was going to kill himself." It was determined that constant watch protocol would be followed. During the interview, Mr. Washington reported that his head and stomach hurt.

I. On February 10, 2023 at 9:51 AM William Vinson, Jr. RN documented: Per MH, IM remains on constant watch.

J. On February 13, 2023, Dr. Padmavathi, Geddam ordered OLANZapine, 5 MG oral tablet, to take 1 tablet twice daily. The stop date of 3/2/2023 was ordered.

K. On February 13, 2023 at 8:50 AM, Danielle McGuire, LPN documented: Per Dr. Geddam at 0930 send pt to CSU for further MH eval and treat. MHC Stephens to find placement and notify security.

L. On February 13, 2023 at 9:02 AM, Danielle McGuire, LPN documented: Per Dr. Geddam at 1000 continue constant watch. Start Zyprexa 5mg PO BID. Security notified. Will retry for CSU placement tomorrow."

M. On February 14, 2023 at 9:03 AM, Danielle McGuire, LPN documented "Per Dr. Reddy at 0930 continue constant watch. Security notified."

N. On February 15, 2023 at 9:23 AM, William Vinson, Jr. RN documented "Per MH, IM remains on constant watch."

O. On February 15, 2023 at 9:29 AM, Lacey Wilkes LPN documented the following: Per MH Stephens, inmate is pending transfer. Inmate medically cleared for transfer, BP: 113/88, P: 130, unable to obtain other vital signs.

P. On February 15, 2023 at 10:09 AM, Calvin Stephens, MHC created a mental health note that included the following: Inmate continue to remain unstable and will not answer questions he just lays on the floor of his cell responding to internal stimuli…Follow up per suicide watch protocol. Inmate was prescribed Zyprexa 5 mg by Dr. Geddam but refused to take medications. Inmate appears not to be getting any better. Looking at a possible referral to the CSU due to continued hallucinations and refusing meals. Inmate has missed four consecutive meals.

Q. On February 15, 2023 at 10:20 AM, Calvin Stephens, MHC created a mental health note that included the following: Suicide watch precautions with constant watch observation.

R. On February 15, 2023 at 10:25 am, Wilkes and Vinsen RN medically cleared Mr. Washington for transfer to another facility. They reported that no injuries were found.

S. On February 15, 2023 at 10:40 AM, Calvin Stephens, MHC created a mental health note that included the following: Inmate was not oriented and could not respond to questions. He was responding to internal stimuli and was having hallucinations…Inmate appears unstable…follow up per constant suicide watch protocol. Inmate was prescribed Zyprexa

5 mg but inmate refused the medication. Inmate may be referred to CSU if he continues to decompensate.

T. On February 15, 2023 at 11:14 AM, Cavlin Stephens, MHC created a mental health note that included the following: Inmate continue to remain unstable and will not answer questions he just lays on the floor of his cell responding to internal stimuli. Inmate is waving his hands as if to fight something off. Inmate case was staff with facility psychiatrist Doctor Geddam and charge nurse at 9:45 am with a recommendation that inmate be referred to the CSU…Follow up per suicide watch protocol. Inmate was prescribed Zyprexa 5 mg by Dr. Geddam but refused to take medications. Inmate appears not to be getting any better. Looking at a possible referral to the CSU due to continued hallucinations and refusing meals. Inmate has missed six consecutive meals. Contacted State Coordinator for CSU/ACU placement.

U. On February 16, 2023 at 8:59 AM, Heather Smith LPN documented the following: 0915 verbal order Dr. Geddam, continue constant watch. Per Mr. Lay MH counselor, transfer pending to Baldwin County.

V. On February 16, 2023 at 10:19 AM, William Vinson, Jr. RN charted the following: Per MH, transfer location was changed from Baldwin State to ASMP.

W. On February 16, 2023 at 10:45 AM, William Vinson, Jr. RN charted the following: IM brought to medical just prior to MH transfer to ASMP. IM has multiple old bruises to both legs and feet below knees from kicking doors. Bruise in all phases of healing. some yellow/green, blue and purple. This is first time IM has made medical aware of apparent self inflicted injuries from kicking door. IM transported to ASMP in wheelchair.

X. On February 16, 2023 at 12:06 PM, Calvin Stephens, MHC created a mental health note that included the following: "Inmate continue to remain unstable and will not answer questions he just lays on the floor of his cell responding to internal stimuli. Inmate is waving his hands as if to fight something off. Inmate case was staff with facility psychiatrist Doctor Geddam and charge nurse at 9:15 am with a recommendation that inmate be referred to the CSU. Inmate continue to not eat meals and is defecating and urinating on his cell floor ….Contacted State Coordinator for CSU/ACU placement. Inmate has placement at Augusta State Medical Prison.

Y. February 16, 2023, Wellpath medical records from Baldwin State Prison state:

   a. "29 yr bm presenting for a CSU physical, from local jail for hallucinations, responding to internal stimuli, defecating and urinating on self. Pt has a hx of depression. Pt has not eaten in the past 8 days. Pt denies being on any medications. Reports meth use in the past however not recently. Pt states that 3-4 days ago he woke up and he was in the cell. According to the officers with him use of force and report that the remaining bodily bruises were self-inflicted. Pt reports pain with urination for the past 4 days."

   b. a and ox 2, s1 s2 rrr cta b/l, labored breathing, perrla, moderately dry lips, healed stab wounds on chest, healed lacerations on wrists, ecchymosis at umbilicus, blistered noted on b/l knees with significant ecchymosis extending from the knees to the feet in various areas. edema to b/l hands and lower extremities Urine drug screen + for marijuana urine dip stick +for ketones, blood.

   c. Dr. Larowe evaluated patient and provided recommendations for lab work, close follow up and abx. R/O Acute Kidney injury secondary to extensive use of

force/self inflicted bodily harm. Unable to currently obtain labs and imaging. Refer to AU ER for eval. report given to Karis. Based upon ER recommendations will also consider dp2, bactrim ds for uti symptoms/blisters. CXR and KUB to eval for trauma. Urine drug screen. NS 0.9% 500ml now and 125ml/hr for a total of 1 liter.

Z.  Mr. Washington was taken to Augusta University Medical Center Emergency Room on February 16, 2023 at 6:28 PM. AUMC Medical records indicate the following:

    a.  It was reported to AUMC staff that Mr. Washington was brought to the ER because of "10 days of not eating" as the primary complaint.

    b.  Upon admission, Mr. Washington was tachycardic and complained of diffuse body pain, including chest pain, shortness of breath, abdominal pain, dysuria, and pain in lower extremities. He also reported that he had been urinating blood. Hospital staff observed that he had pitting edema alongside purpura and blister like lesions on lower extremities and upper extremities scattered. Staff described him as "clearly an ill patient."

    c.  Imaging revealed gastroduodenal perforation, pneumomediastinum and some subcutaneous air. Mr. Washington was taken to the operating room emergently for ex-lap with omental patch of two duodenal perforations and a feeding j-tube was placed. It was reported that the duodenal perforation may have been caused by a caustic ingestion.

    d.  Mr. Washington was found to have bilateral upper and lower segmental and subsegmental Pulmonary embolisms. He was admitted to the Surgical/Trauma Intensive Care Unit STICU for hemodynamic monitoring and hypertensive with systolic blood pressure in 200s. A transthoracic echocardiogram (TTE) revealed

an ejection fraction rate of <15% and cardiac index of 1.9. IV fluids were stopped and he was placed on afterload reduction with scheduled hydralazine. He was diagnosed with acute systolic heart failure, and Takotsubo cardiomyopathy (Takotsubo syndrome).

e. Mr. Washington was severely septic. He was also found to have bilateral lower extremity ecchymosis, erythema, and pustules. Purpuric rash was present on all four extremities, most pronounced on both legs with scattered pustular lesions on his knees.

f. Mr. Washington was diagnosed with acute kidney injury, with significantly elevated CK and lipase noted as well.

AA. Mr. Washington was discharged from Augusta University Hospital on March 5, 2023 and transported to Augusta State Medical Prison, where he received continued care for his injuries.

## 10.

Each of the opinions that I express herein are given to a reasonable degree of medical probability.

## 11.

Based on my education, training, experience and the facts contained in the records I reviewed, it is my opinion that CoreCivic and its nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care of Mr. Washington, violated the standard of care and failed to exercise that degree of care and skill ordinarily exercised by medical professionals in the correctional health environment generally under the same or similar conditions and like surrounding circumstances in the care and treatment of Mr. Washington.

12.

Based upon my review of the medical records and materials described above, and my education, training, and expertise, it is my professional opinion that the applicable standard of care required the CoreCivic staff to monitor, supervise, and care for residents of the correctional facility, including Mr. Washington.

13.

More specifically, it is my opinion that the standard of care required CoreCivic and its nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Washington to:

A.  Properly evaluate and treat all puncture wounds to Mr. Washington's stomach and chest immediately following the February 8, 2023 11:30 AM incident before medically clearing him for segregation;

B.  Properly evaluate and treat all of Mr. Washington's injuries immediately following the use of force incident that occurred February 8, 2023 at approximately 5:15 PM;

C.  Properly clean all open wounds to prevent infection;

D.  Properly wash the chemical agent off Mr. Washington;

E.  Prevent Mr. Washington's access to an illegal and/or caustic substance while incarcerated, particularly while in segregation, and/or remove access to an illegal and/or caustic substance once it becomes reasonably apparent he has/had access to such substance;

F.  Remove, or cause to be removed, restrictions on Mr. Washington's mobility, including the handcuffs and leg irons, to minimize the risk of further injury, including but not limited to blood clot formation and development of pulmonary embolisms;

12

G. Properly assess and evaluate Mr. Washington for blood clots and, thereby, pulmonary embolisms, particularly after an extended period of immobility, and/or being at an increased risk of having blood clots and, thereby, pulmonary embolisms;

H. Properly evaluate and treat Mr. Washington during the constant watch period that followed the February 8, 2023 incidents, a period of time during which it was known he had sustained injuries during both February 8, 2023 incidents and that he was exhibiting "bizarre behaviors;"

I. Properly assess and evaluate Mr. Washington's deteriorating condition;

J. Provide or obtain timely and proper medical intervention and treatment for Mr. Washington's deteriorating condition; and

K. Timely and properly implement hunger strike protocol measures

14.

It is my opinion, based on my education, training, experience, and my review of the aforementioned records, that CoreCivic and its nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Washington violated the standard of care for nurses, nurses' aides, nurse practitioners, medical doctors and other staff involved in the care and treatment of Mr. Washington in at least the following manners:

A. Failing to properly evaluate and treat all puncture wounds to Mr. Washington's stomach and chest immediately following the February 8, 2023 11:30 AM incident before medically clearing him for segregation. Moreover, Mr. Washington should not have been cleared for segregation without proper medical evaluation and treatment of wounds. Corecivic staff should have administered or otherwise obtained proper medical evaluation and treatment of his wounds;

B. Failing to properly evaluate and treat all of Mr. Washington's injuries immediately following the use of force incident that occurred February 8, 2023 at approximately 5:15 PM. Moreover, proper medical evaluation and treatment should have been administered even though Mr. Washington purportedly "refused." Moreover, Mr. Washington should not have been medically cleared without proper medical evaluation and treatment of wounds. Corecivic staff should have administered or otherwise obtained proper medical evaluation and treatment of his wounds;

C. Failing to immediately clean Mr. Washington's open wounds or wash the chemical agent off of him;

D. Failing to prevent Mr. Washington's access to an illegal and/or caustic substance while incarcerated, particularly while in segregation, and/or remove access to an illegal and/or caustic substance once it becomes reasonably apparent he has/had access to such substance;

E. Failing to timely remove, or cause to be removed, restrictions on Mr. Washington's mobility, including the handcuffs and leg irons, to minimize the risk of further injury, including but not limited to blood clot formation and development in pulmonary embolisms;

F. Failing to properly assess and evaluate Mr. Washington for blood clots or pulmonary embolisms, particularly after an extended period of immobility, and/or being at an increased risk of having blood clots and, thereby, pulmonary embolisms;

G. Failing to properly evaluate and treat Mr. Washington during the constant watch period that followed the February 8, 2023 incidents, a period of time during which it was known he had sustained injuries during both February 8, 2023 incidents and that he was exhibiting "bizarre behaviors;"

H.  Failing to properly assess and evaluate Mr. Washington's deteriorating condition;

I.  Allowing Mr. Washington's evolving deteriorating condition to be untreated for several days without proper medical intervention and treatment;

J.  Failing to provide or obtain timely and proper medical intervention and treatment for Mr. Washington's deteriorating condition; and

K.  Failing to timely and properly implement hunger strike protocol measures.

15.

It is my opinion that the failure of CoreCivic and their nurses, nurses' aides, nurse practitioners, medical doctors and other staff and medical professionals involved in the care of Mr. Washington's care to adhere to the standard of care as outlined above resulted in significant injuries and pain and suffering to Mr. Washington.  Had they adhered to the standard of care as outlined above, it is more likely than not that

A.  Mr. Washington would not have experienced the stress induced acute heart failure or Takotsubo cardiomyopathy (Takotsubo syndrome);

B.  Mr. Washington would not have developed blood clots that dislodged and traveled to his lungs, causing the pulmonary embolisms;

C.  Mr. Washington would not have developed gastroduodenal perforations;

D.  Mr. Washington would not have developed infection or sepsis; and

E.  Mr. Washington would not have developed acute kidney injury

16.

This Affidavit is not intended to provide an exhaustive listing of all of the opinions which I may have concerning the matters at issue in the case and I reserve the right to express additional opinions based on any additional information which may come to my attention as the case

15

proceeds. The opinions expressed herein are not intended to and should not be construed to foreclose or exclude opinions that other negligent acts or omissions and regulatory/statutory violations may have also occurred or contributed to Mr. Washington's outcome, but rather is given to meet the limited requirements of O.C.G.A. §9-11-9.1 to set forth at least one act of negligence for the Defendants in question.

FURTHER AFFIANT SAYETH NAUGHT.

I certify under penalty of law that the foregoing is true and correct.

Signed, this ___21___ day of ___January___, 2025.

EMIL A. DAMEFF, M.D., CCHP

SWORN TO AND SUBSCRIBED before me this _21_ day of ___January___, 2025.

NOTARY PUBLIC                    [seal]

MINERVA GONZALEZ
Notary Public - State of Florida
Commission # HH 585722
My Comm. Expires Dec 19, 2028
Bonded through National Notary Assn.

17

# EXHIBIT A

# CURRICULUM VITAE

## *EMIL A. DAMEFF, M.D., CCHP*

---

### *Home Address and Telephone*

███████████████
███████████████
███████████████
███████████████

### *Biographical Data*

**Date of Birth:** ████████

**Social Security:** ████████

### *Education*

| | |
|---|---|
| August 1983 – May 1984 | Edison Community College<br>Fort Myers, Florida<br>Accelerated Dual Credit Program<br>(Combined High School Senior Year<br>And Freshman Year College) |
| July 1984 – May 1987 | Southern College<br>Collegedale, Tennessee<br>Bachelor of Arts, Chemistry<br>Cum Laude<br>Dean's List, Honor Roll<br>Tri-Beta<br>Honor Society |
| August 1987 – May 1991 | University of Miami School of Medicine<br>Miami, Florida<br>M.D., May 11, 1991<br>Class Standing: 2nd Quartile<br>GPA:   First Year: 3.13<br>        Second Year: 3.44<br>        Third Year: 3.74<br>        Fourth Year: Pass (P/F) |
| July 1991 – June 1992 | University of Florida<br>Shands Hospital/Gainesville VA Hospital<br>Internal Medicine Internship |
| July 1992 – January 1993 | University of Florida<br>Shands Hospital/Gainesville VA Hospital<br>Neurology Resident |

*Emil A. Dameff, M.D., CCHP*
*Page 2*

<u>**Professional Experience**</u>

| | |
|---|---|
| February 12, 1993 – May 20, 1993 | Staff Physician<br>Co-Clinical Coordinator of Outpatient Clinic<br>Florida Department of Corrections<br>North Florida Reception Center<br>PO Box 628<br>Lake Butler, Florida 32054 |
| May 21, 1993 – July 31, 1996 | Chief Health Officer<br>Florida Department of Corrections<br>DeSoto Correctional Institution<br>PO Drawer 1072<br>Arcadia, Florida 34265 |
| August 1, 1996 – March 1, 1998 | Director of Regional Health Care<br>Florida Department of Corrections<br>Region V<br>4520 Oak Fair Boulevard<br>Tampa, FL 33609 |
| March 2, 1998 – July 15, 2001 | Regional Medical Executive Director<br>Region IV<br>Florida Department of Corrections<br>33123 Oil Well Road<br>Punta Gorda, FL 33955 |
| July 16, 2001 –June 13, 2009 | Regional Medical Director<br>Prisons: Illinois, Mississippi, West Virginia, Ohio<br>Jails: National Director<br>Wexford Health Sources<br>HIV Consultant |
| June 13, 2009-July 1, 2015 | Corporate Medical Affairs Director<br>Wexford Health Sources |
| July1-2015-Present | Consultant |
| December 1999-Present | ShorePoint Health Punta Gorda (Formerly Riverside)<br>ShorePoint Behavioral Center<br>Medical Care of 52 bed inpatient Behavioral Health Unit |

<u>**Certification**</u>

National Board of Medical Examiners Part 1 June 1989 <u>Pass</u> (Score 545__70[th] percentile)
National Board of Medical Examiners Part 2 September 1990 <u>Pass</u>
National Board of Medical Examiners Part 3 March 1992 <u>Pass</u>
<u>Certified Correctional Health Professional</u> (CCHP) January 1, 2011
Diplomat of the Academy of Correctional Health Care Professionals January 1, 2011
Diplomat of National Board of Medical Examiners July 1, 1992

Chairman of the Hospital Board ShorePoint Punta Gorda
*Florida License #ME0063276*